## THE KONGSLI.

### (District Court, D. Maine. July 15, 1918.)

### No. 437.

1. ADMIRALTY ⬤⟿26—PROCESS OF FOREIGN COURT—PROCEEDING IN PERSONAM.
   A suit in the French Tribunal of Commerce at Oran, Algeria, by the master of a British vessel against the master of a Norwegian vessel, claiming damages for collision, in which that tribunal ordered a "protective seizure," and received a letter of indemnity, and released the vessel from attachment, was a suit in personam, and not a proceeding in rem.

2. ADMIRALTY ⬤⟿26—"ACTION IN REM"—"ACTION IN PERSONAM"—DISTINCTION.
   "Actions in rem" are prosecuted to enforce a right to the thing arrested, to perfect a maritime privilege or lien attached to a vessel or cargo, or both, and in which the thing to be made responsible is proceeded against as the real party; and "actions in personam" are those in which an individual is charged personally in respect to some matter of admiralty and maritime jurisdiction, and in which the process and proceedings are different from those in an action in rem.
   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, In Personam; In Rem.]

3. ADMIRALTY ⬤⟿16—PROCEEDING IN REM—JURISDICTION.
   The courts of the United States recognize liens in rem arising out of maritime collisions, and possess the procedure to enforce them, and will do so, even where a collision occurred in the territorial waters of a country whose law does not give such maritime lien against the offending vessel.

4. ABATEMENT AND REVIVAL ⬤⟿13—PENDING PROCEEDING IN FOREIGN COURTS—EFFECT.
   The pendency of an action in a foreign court is no bar to a suit in the federal court, though it is otherwise if a definitive judgment has been rendered by the foreign court in such suit.

5. ADMIRALTY ⬤⟿28—LIEN—ACTION IN REM.
   The owner of a vessel has a lien arising out of a collision, given by the general maritime law of the United States, which may be enforced by an action in rem.

6. ADMIRALTY ⬤⟿35—ACTION IN REM—FOREIGN LAW.
   The laws of the United States are supreme in the United States courts over the French law; and there is no reason, under the principle of re-

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ciprocity, for dismissing a libel growing out of a collision in French waters, and leaving the question to the French court, in which a previous action in personam has been brought, which has not proceeded to judgment.

7. ADMIRALTY �köm1—JURISDICTION—MARITIME USAGES OF FOREIGN COUNTRIES.
    The maritime usages of foreign countries are not obligatory upon the courts of the United States, and will not be respected as authority, except so far as they are consonant with the well-settled opinions of English and American jurisprudence.

8. ADMIRALTY ⊗⊃57—PROCEEDING IN REM—EFFECT OF PROCEEDINGS IN FOREIGN COURT—LETTER OF INDEMNITY.
    A letter of indemnity, taken after a "protective seizure" by the French Tribunal of Commerce in Oran, Algeria, upon which a vessel was released from attachment arising out of a collision, did not have the force of a bond given to discharge a vessel arrested upon a suit in rem, in which latter case the bond discharges the lien, releases the vessel, and takes the place of the vessel itself.

In Admiralty. Libel by the Kincraig Steamship Company, Limited, against the Norwegian steamship Kongsli. Claimant's exceptions to the libel, and its alternative motion to dismiss the libel, overruled.

Kirlin, Woolsey & Hickox, of New York City, and Benjamin Thompson and Nathan Thompson, both of Portland, Me. (John M. Woolsey, of New York City, of counsel), for libelant.

Duncan & Mount, of New York City, and Wm. H. Gulliver, of Portland, Me., specially, for respondent.

HALE, District Judge. On February 6, 1917, the British steamship Kincraig, owned by the Kincraig Steamship Company, Limited, a British corporation, and the Norwegian steamship Kongsli, came in collision in the harbor of Oran, Algeria. A suit was begun in the Tribunal of Commerce at Oran by Capt. Abbott, master of the Kincraig, against Capt. Olsen, master of the Kongsli, claiming damages to the Kincraig, including damages for delay. Another suit was brought by the Oran Coal Company, owner of some coal barges injured in the collision, against both the master of the Kincraig and the master of the Kongsli. On February 15, 1917, Capt. Abbott in his suit petitioned the court for a "protective seizure" of the Kongsli for 225,000 francs, and such seizure was ordered; on February 17, 1917, the "protective seizure" was made and reported by the court officers. The seizure was also made at the same time on behalf of the suit of the Oran Coal Company. On February 23d it appears by a letter of indemnity that a guaranty in the sum of £20,000 was received to cover "the responsibilities and consequences which may be determined, owing to the collision which occurred on the 6th of February." It appears that the Kongsli was on that day released from attachment. On February 7, 1917, the Tribunal of Commerce by decree appointed three experts, former sea captains, to examine and report to the court on the extent of the damage to the coal barges and coal, and also on the extent of the damage to the Kincraig, including loss of time, and the liability therefor. These experts made an examination of certain facts, and afterwards made a report to the court, in which they state their conclusions, as follows:

"That it is difficult to cast on the steamer Kongsli the entire responsibility of all the damages caused by the breaking of its moorings as much to the Kincraig as to the barges, and, admitting that there would be doubt about the efficiency of its mooring, we think in our minds and consciences that its responsibility must be very greatly lessened in reason of the atmospheric conditions, first causes of the accidents, both the violence and unexpectedness of which *may constitute an accidental case foreseen by the lawmaker.*"

The case at Oran has not proceeded to trial and judgment. After being released by the letter of indemnity, the Kongsli proceeded to sea.

On March 22, 1917, this libel, brought by the Kincraig Steamship Company, Limited, the owner of the steamship Kincraig, against the Kongsli, was filed in the District Court for the District of Maine; the steamship having come into this jurisdiction. On the same day the vessel was arrested by the marshal. Bond was given in the sum of $140,000, and the Kongsli was released, and again proceeded to sea. This bond takes the place of the ship.

The case now comes before the court on the exceptions of the claimant to the libel, on the ground that the libelant already had a suit against the Kongsli for the same cause of action for which the present libel is brought, on which suit there had been an attachment and release of the vessel on the giving of guaranty, that the ship was thereby made free and clear of all liens for the claim of damage to the Kincraig, and from the alleged lien, to enforce which the present suit was brought, and that the present suit and seizure of the ship are vexatious. An alternative motion is also made by the claimant to dismiss the libel. This motion is said to be addressed to the discretion of the court.

The libelant has moved to strike out the exceptions, on the ground that they do not come within the rule as to the scope and purpose of exceptions, but that the question raised by the claimant should be presented by a motion to dismiss with proofs. Without entering into a discussion as to the technical objections to the exceptions, I will consider the question involved to be before the court on the motion.

Does the fact that proceedings are pending in Oran, Algeria, constitute a bar to the proceedings here?

[1-4] Upon an examination of the facts in the case, it does not appear that the proceeding in the French court in Oran, Algeria, was a proceeding in rem. Indeed, there appears to be nothing in the law of procedure in France which corresponds with, or is similar to, a proceeding in rem for collision under American or English law. The suit at Oran was a suit in personam to enforce a claim for negligence. In that suit a "protective seizure" was made; that is, substantially, an attachment of the steamer. So far, then, as appears, the suit was not against the ship itself. It was a proceeding by attachment. So far as anything is shown, any other property might as well have been attached to secure the claim in question. It cannot be said that by the suit in the French court the same matters are brought at issue which are brought at issue in this suit. The difference between the two proceedings has been repeatedly recognized in our courts. Wolf v. Cook (C. C.) 40 Fed. 432, 438; The Sabine, 101 U. S. 384, 391, 25 L. Ed. 982. In the latter case, in speaking for the Supreme Court, Judge Clifford said:

"Actions in rem are prosecuted to enforce a right to things arrested to perfect a maritime privilege or lien attaching to a vessel or cargo or both, and in which the thing to be made responsible is proceeded against as the real party; but actions in personam are those in which an individual is charged personally in respect to some matter of admiralty and maritime jurisdiction. Both the process and proceedings are different, and the appropriate decree in the one might be absolutely absurd in the other."

While, apparently, the French courts do not possess any procedure designed to enforce a lien in rem arising out of a maritime collision, the courts in our country do recognize such liens; they have the machinery to enforce them, and will enforce them, even where the collision occurred in the territorial waters of a country whose law does not give such maritime lien against the offending vessel. It is the prevailing doctrine of our courts that the pendency of an action in a foreign court is no bar to a suit in the federal court. If a definitive judgment has been rendered in such suit in the foreign court, it is, of course, otherwise. The Eagle, 8 Wall. 15, 26, 19 L. Ed. 365; The Kalorama, 10 Wall. 204, 218, 19 L. Ed. 941; The Isabella, 13 Fed. Cas. No. 7,100; Elder Dempster Shipping Co., Limited, v. Pouppirt, 125 Fed. 732, 740, 60 C. C. A. 500; The Kaiser Wilhelm II (D. C.) 175 Fed. 215, 219; The Kaiser Wilhelm II (D. C.) 230 Fed. 717, 723; The Maggie Hammond, 9 Wall. 435, 461, 19 L. Ed. 772. The Bold Buccleugh, a leading English authority, has been repeatedly relied upon in our courts. That case is found under the name of Harmer v. Bell, 7 Moore (Privy Council) 267, 19 L. T. 235. The bark William was run down in the River Humber by the Bold Buccleugh, and lost. The owners of the William brought suit against the owners of the Bold Buccleugh in the Court of Sessions in Scotland. The steamer was arrested in Leith Harbor; on bail being given to answer the action in that court, she was released. She returned to Hull and was there again arrested by virtue of a warrant under the seal of the High Court of Admiralty; an action in rem was commenced in that court, and instructions sent to Scotland to abandon the suit in the Court of Sessions. The owners of the Bold Buccleugh appeared under protest. Dr. Lushington, the judge of the High Court of Admiralty, overruled the plea of the owners of lis alibi pendens. The Privy Council affirmed the decision. In speaking for the court, Sir John Jervis said:

"The pleadings show that the proceedings in Scotland were commenced by process against the persons of the defendants, and that the seizure of the vessel was collateral to that proceeding, for the mere purpose of securing the debt. We have already explained that, in our judgment, a proceeding in rem differs from one in personam, and it follows that, the two suits being in their nature different, the pendency of the one cannot be pleaded in suspension of the other."

The learned proctors for the claimant have brought to my attention certain recent English authorities which seem to take a different view. They have cited The Christiansborg (in the Court of Appeal, 1885) 10 Probate Div. 141; The Hagen (Court of Appeal, 1908); The Jasep (1896) 12 Times Law Reps. 375, affirmed by Court of Appeal 12 Times Law Reps. 434. These later cases do not overrule The Bold Buccleugh, but treat the question from a different point of view. The

Bold Buccleugh has always been regarded as an authority, and is in the line of our American decisions. The Supreme Court recognizes it as sound law in courts exercising admiralty jurisdiction. The John G. Stevens, 170 U. S. 113, 127, 18 Sup. Ct. 544, 42 L. Ed. 969; The Elfrida, 172 U. S. 186, 206, 19 Sup. Ct. 146, 43 L. Ed. 413. In The Robert W. Parsons, 191 U. S. 17, 37, 24 Sup. Ct. 8, 15 (48 L. Ed. 73) in speaking for the Supreme Court, Mr. Justice Brown said:

"In all these cases the distinction is sharply drawn between a common-law action in personam, with a concurrent attachment against the goods and chattels of the defendant, subject, of course, to any existing liens, and a proceeding in rem against the vessel as the debtor or 'offending thing,' which is the characteristic of a suit in admiralty. The same distinction is carefully preserved in the general admiralty rules prescribed by this court; rule 2 declaring that in suits in personam the mesne process may be 'by a warrant of arrest of the person of the defendant, with a clause therein that if he cannot be found, to attach his goods and chattels to the amount sued for'; and rule 9, that in suits and proceedings in rem the process shall be by warrant of arrest of the ship, goods or other things to be arrested, with public notice to be given in the newspapers. The former is in strict analogy to a common-law proceeding and is a concurrent remedy. The latter is a proceeding distinctively maritime, of which exclusive jurisdiction is given to the admiralty courts."

Marsden, on Collisions at Sea, at pages 88 and 165, refers to The Bold Buccleugh as a leading authority.

[5-7] In the case at bar the libelant has a lien given by the general maritime law of the United States. Such lien may be enforced by an action in rem. This right is given by the laws of the United States; and the laws of the United States are supreme in our courts over French law. There appears, indeed, to be no reason in French law, under the principle of reciprocity, for dismissing the libel and leaving the question to the French courts, in a case which has not already proceeded to judgment. Hilton v. Guyot, 159 U. S. 113, 16 Sup. Ct. 139, 40 L. Ed. 95. The maritime usages of foreign countries are not obligatory upon the courts of the United States, and will not be respected as authority, except so far as they are consonant with the well-settled opinions of English and American jurisprudence. This is well settled by the Supreme Court. The Elfrida, 172 U. S. 186, 19 Sup. Ct. 146, 43 L. Ed. 413.

[8] In the case in the French court in Algeria, the letter of indemnity upon which the vessel was released from attachment did not have the force of a bond given to discharge a vessel which has been arrested upon a suit in rem. In the latter case, the bond discharges the lien and releases the vessel, because the bond is a substitute for the vessel. The guaranty of the bond takes the place of the vessel itself. The letter of indemnity given in the case at Oran was not such a bond; for the suit was not a suit in rem. If the suit had been a proceeding in rem, and the vessel had been released upon a bond taking the place of the ship and becoming a substitute for the ship, then there would have been ground for holding that this further suit, brought in the Maine district, might be a vexatious proceeding; but the facts in the case at bar do not sustain the contention of the claimant.

The libelant by its proctors has formally offered to dismiss the pro-

ceeding in the French court. The claimant has not satisfied me that I have a right to dismiss this suit in the Maine district, and leave the parties to their remedy in the French court. In coming to this conclusion, I do not find it necessary to consider whether the exceptions properly raise the question sought to be raised by them. The motion to dismiss, although directed to my discretion, may be regarded as raising the whole question, and as properly presenting the facts.

The exceptions are overruled; the motion to dismiss is overruled.

---

&#8258;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes