## GALEF v. UNITED STATES.

District Court, E. D. South Carolina.   March 29, 1928.

No. 866.

1. **Torts ⬤⇒2—Question whether act gives rise to liability in tort depends on lex loci delicti.**

The question whether or not an act gives rise to liability in tort depends on the lex loci delicti; the lex fori controlling in matters of procedure and remedy.

2. **Collision ⬤⇒2—Liability of United States to American cargo owner for damages from collision with Shipping Board vessel in German harbor held governed by American and not German law (Suits in Admiralty Act March 9, 1920 [46 USCA §§ 741–752]).**

Liability of United States to American cargo owner of carrying vessel for collision of Shipping Board vessel with carrying vessel in territorial waters of Germany *held* governed by maritime law as administered by admiralty courts of United States, which is the law of the forum, particularly Suits in Admiralty Act March 9, 1920 (46 USCA §§ 741–752; Comp. St. §§ 1251¼–1251¼l), and not by law of Germany.

3. **Admiralty ⬤⇒18—Jurisdiction of United States maritime courts, independent of foreign law, extends to torts committed in territorial waters of foreign powers.**

Jurisdiction of maritime courts of the United States, independent of foreign law, extends to maritime torts committed in ports and harbors and territorial waters of foreign powers, and they will enforce rights growing out of such torts by virtue of the maritime law as accepted by the United States.

In Admiralty.   Libel by Jacques Galef against the United States.   Decree for libelant.

Bigham, Englar & Jones, of New York City, and Alfred Huger, of Charleston, S. C., for libelant.

J. D. E. Meyer, of Charleston, S. C., for the United States.

Before HALE, District Judge, sitting in this district under designation of the Chief Justice.

HALE, District Judge.   This libel is brought against the United States of America under the provisions of the Suits in Admiralty Act of March 9, 1920 (41 Stat. 525 [46 USCA §§ 741–752; Comp. St. §§ 1251-¼–1251¼l]).   The libelant, an American citizen, had a cargo of firearms on board the lighter No. 12071, a German harbor vessel.   On October 1, 1921, in the harbor of Hamburg, Germany, the lighter was sunk and the cargo damaged by coming into collision with the steamship Magmeric, a Shipping Board vessel.

The libel was filed in this court on June 27, 1923.   On August 22, 1923, the United States filed its answer, alleging that the collision was due to no fault on the part of the Magmeric, but was caused by the fault of the lighter.   On January 8, 1927, the answer was amended to set up that the collision occurred in the territorial waters of the republic of Germany, and was brought about by the mutual fault of the lighter and the Magmeric.   At the trial a stipulation was filed that there was a collision between the Magmeric and the lighter at Hamburg, in German territorial waters, on October 1, 1921, as the result of which the lighter sank and the libelant's firearms aboard the lighter were damaged; that the collision resulted from the common fault of both vessels, the fault of the lighter being twice as great as that of the Magmeric; and that the libelant is an American citizen.

The libelant claims that he is entitled to recover his full damages from the Magmeric, under the rule prevailing in our maritime courts that, when a cargo is damaged in a collision between two vessels, caused by their mutual fault, the cargo owner may recover the whole amount of his loss from either one of the offending vessels, his claim being jointly and severally against either or both vessels.   Phœnix Insurance Co. v. The Atlas, 93 U. S. 302, 23 L. Ed. 863.

The respondent, the owner of the Magmeric, contends that whatever rights grew out of the collision between the Magmeric and the lighter were created by the law of Germany, the territorial sovereign within whose jurisdiction the collision took place; that the right given to the libelant by the German law was for one-third of the damage resulting from the collision; and that this court should enforce this right, and allow the libelant to recover one-third of his damage, and no more.

The respondent offered the depositions of two experts in the German law.   Dr. Feilchenfeld testified that section 736 of the German Commercial Code reads as follows:

"If the collision has been caused by negligence of the crews of both vessels concerned, the owners of the vessels are obligated to compensate for the damage which has been done by the collision to chattels on board the vessel in proportion to the degree of the negligence on each side.   If under the circumstances such a proportion cannot be determined or if the negligence of each side appears to be of equal weight, then the owners are under obligation to compensate one-half each of the sum total of the damage done.

"The owners of the vessels are liable to the injured person as joint and several debtors for the damage which has been caused by the killing of a person aboard or through the injury to the body or health of a person aboard. The rules of paragraph 1 of this section apply as between the owners themselves for the class of damage dealt with in this paragraph."

Dr. Feilchenfeld said that, under German law, the lighter was two-thirds at fault, and the Magmeric one-third at fault, and would be liable for one-third of the damage to the cargo on the lighter, resulting from the collision. He further said that the leading authority on maritime law in Germany is Mittelstein, the president of the Hanseatic Court of Appeals. According to the translation made by the witness, Mittelstein's comment on section 736 of the German Commercial Code is as follows:

"The cargo of the negligent vessel can sue this vessel as well as the other negligent vessel. They are liable as joint and several debtors. Section 840, German Civil Code. But the liability of the carrying vessel will hardly ever become practicable because the owner usually has exonerated himself by negligence clauses from the consequences of a collision caused by the negligence of his vessel. The other negligent vessel, however, is liable only in proportion to the quota of its negligence. Consequently, if the owner of the carrying vessel has exonerated himself in a contract with the cargo owner, the cargo can recover from neither side beyond the quota of the negligence of the noncarrying vessel."

Section 840, German Civil Code, referred to by Mittelstein, is as follows:

"If several persons are jointly responsible for any damages arising from an unlawful act, they are liable, subject to the provision of 835, par. 3, as joint debtors."

Dr. Schroeder testified that the question was covered by section 736.

It is urged by the respondent that the evidence of the experts makes it clear that the right given to the libelant is for only one-third of the damage. It is contended by the libelant that Mittelstein's interpretation of section 736 is not in accordance with that of Dr. Feilchenfeld; that this section may be taken to define the liabilities of joint tort-feasors as between themselves and not as between them and the injured party; that there is grave doubt as to the correctness of the respondent's interpretation of the statute; that in such case the court must adopt the interpretation most in accord with the

law of the forum; and that, even if the court should hold the German law applicable here, the libelant is entitled to recover his entire loss from the respondent. It is not now necessary to discuss the alleged difference between the interpretations of the German law.

The learned counsel for the respondent contends that, the damage to the libelant's cargo having taken place on board a German harbor vessel in German territorial waters, all rights ex delicto must be determined by the lex loci, and that the provisions of the German Commercial Code limit the libelant's remedy, and his right against the Magmeric or her owner, to one-third of the damage caused to his cargo by the collision; and that the following cases are conclusive on the subject:

Smith v. Condry, 1 How. 28, 11 L. Ed. 35, involved a collision in the harbor of Liverpool between two American vessels. One vessel set up the defense of compulsory pilotage; the theory of that defense being that the pilot, not being voluntarily employed, is not the agent of the owner of the ship. On that question the Supreme Court said:

"The collision having taken place in the port of Liverpool, the rights of the parties depend upon the provisions of the British statutes, then in force; and if doubts exist as to their true construction, we must, of course, adopt that which is sanctioned by their own courts."

The respondent urges that the provisions of the German Commercial Code limit the rights growing out of the collision; that the rights of the cargo on the lighter against the ship are limited to one-third of the loss sustained by the cargo; and that the court should not enlarge these rights to the extent which our law would have granted, had the collision occurred within our territorial waters. Slater v. Mexican National R. R. Co., 194 U. S. 120, 24 S. Ct. 581, 48 L. Ed. 900; Robinson v. Detroit & C. Steam Nav. Co. (C. C. A.) 73 F. 883; The Harrisburg, 119 U. S. 199, 7 S. Ct. 140, 30 L. Ed. 358; Boyd v. Clark (C. C.) 8 F. 849; Partee v. St. Louis & S. F. R. Co. (C. C. A.) 204 F. 970, 51 L. R. A. (N. S.) 721; Theroux v. Northern Pacific R. Co. (C. C. A.) 64 F. 84; Davis v. Mills, 194 U. S. 451, 24 S. Ct. 692, 48 L. Ed. 1067.

[1, 2] The theory of the defense is that the rights of the parties are governed strictly and solely by the German statute. I cannot agree to this proposition. The Magmeric is the property of the United States and is not subject to the laws of Germany.

The law is stated in the Suits in Admiralty Act.

I understood one of the experts to say, substantially, that the ` Supreme Court of Germany has held, in the case of The Ice King, that vessels of the United States Shipping Board are not subject to the jurisdiction of the German court in actions brought by a person against such vessels or their owners. The respondent has put in evidence a letter from the United States Embassy in Berlin to the German Foreign Office, stating `that the United States would not claim immunity for Shipping Board vessels engaged in commercial pursuits, and that "such vessels, when so operated, will be permitted to be subject to the laws of foreign countries which apply under otherwise like conditions to privately owned merchant ships foreign to such countries." This letter was dated April 19, 1923, and the collision in this case occurred October 1, 1921. But, even if the Magmeric be subject to `the German law in the same degree as a privately owned vessel, I think the policy under which our courts take cognizance of actions in tort, based on foreign laws, is that, if the United States has jurisdiction of the necessary parties and can do substantial justice between them, in accordance with its own method of procedure, the courts will enforce the foreign law, if it is "not contrary to the public policy of the forum, to abstract justice or pure morals, or such as may injure the state or its citizens." Cases bearing upon this subject are grouped in 12 Corpus Juris, 452.

The government has refused, I believe, to ratify the rule laid down by the Brussels Convention as to proportional liability in collision cases. Our courts have recognized the difficulty of determining the degree of fault to be attached to each ship, and the injustice of requiring the innocent cargo owner to proceed against two joint tort-feasors, one of whom may be beyond his reach; and our courts have allowed the cargo owner to collect all his damages from either wrongdoer, leaving to that wrongdoer the right to pursue his remedy against the other for a contribution. In Phœnix Ins. Co. v. The Atlas, 93 U. S. 302, 317 (23 L. Ed. 863) the court discussed the English rule announced in The Milan, Lashington, Adm. 401. In speaking for the Supreme Court, Mr. Justice Clifford said:

"Even suppose that the case of The Milan is a correct exposition of the admiralty law, as administered in the jurisdiction where the decision was made, still it cannot control the question before the court, for the reason that the rule of practice here is different, as is clearly shown by the judgment of this court delivered at the last term of the court. The Alabama and The Game Cock, 92 U. S. 695 [23 L. Ed. 763]."

It appears that, to hold the German statute applicable here, as contended for by the respondent, this court would be obliged to say that a negligent shipowner could relieve himself by stipulation making compensation for his wrongdoing, and to deprive the cargo owner of all remedy for the greater part of his loss. I think this would be to enforce a law injurious to the citizens of the United States and "contrary to the public policy . of the forum, to abstract justice and pure morals." For the Harter Act relieves a shipowner from liability for negligence of the officers and crew under certain carefully restricted conditions and prohibits the owner to stipulate against his own negligence. The question whether or not an act gives rise to liability to tort, I think, depends on the lex loci delicti, the lex fori controlling in matters of procedure and remedy. Pritchard v. Norton, 106 U. S. 124, 129, et seq., 1 S. Ct. 102, 27 L. Ed. 104; Bank v. Donnally, 8 Pet. 361, 8 L. Ed. 974; Ruhe v. Buck, 120 Mo. 178, 27 S. W. 412, 25 L. R. A. 178, 46 Am. St. Rep. 439; Burchard v. Dunbar, 82 Ill. 450, 25 Am. Rep. 334; Hoadley v. Transportation Co., 115 Mass. 304, 15 Am. Rep. 106; 12 Corpus Juris, 447. Our courts have held that the law controlling all matters pertaining to the remedy is the lex fori.

It will be found that both American and German law recognize negligent collision as a `tort giving the injured party a right to damages; they differ only as to the amount of damages ` recoverable from each wrongdoer, and in such a situation, I think, the law of the forum applies. The method of apportioning damages against tort-feasors in collisions is a matter of practice. Phœnix Ins. Co. v. The Atlas, 93 U. S. 302, 23 L. Ed. 863, supra. The Supreme Court has refused to enforce a stipulation in bills of lading, in which the carrier seeks to stipulate against his own negligence, declaring such stipulation to be "unreasonable and contrary to public policy." Liverpool & Great Western Steamship Co. v. Phenix Co., 129 U. S. 397, 9 S. Ct. 469, 32 L. Ed. 788.

The Slater Case, 194 U. S. 120, 24 S. Ct. 581, 48 L. Ed. 900, is relied upon by the learned counsel for the government. In that case the action was founded on the liability for death by wrongful act created by a Mexican statute, there being no common-law liability for wrongful deaths. The court held

that it must recognize the Mexican statute in respect to the nature and extent of damages and method of distributing them. The case applies only to an action based on a foreign statute. Atchison, T. & S. F. R. R. Co. v. Sowers, 213 U. S. 55, 29 S. Ct. 397, 53 L. Ed. 695. I think it will be found that nearly all the cases holding that the foreign law determines the measure of damages for foreign torts are cases in which the right of action depended upon a foreign statute. The right which the libelant here seeks to enforce is not a statutory right based upon a German statute, and the Slater Case is, I think, not decisive of the instant case. The libelant's right in the instant case is based upon the maritime law, as administered by the admiralty courts of the United States. I think the German statute must be held not to be applicable, but that this case falls under the general rule that in matters of procedure and remedy the law of the forum must prevail over the foreign law. In Dorr Cattle Co. v. Des Moines Nat. Bank, 127 Iowa, 153, 98 N. W. 918, 4 Ann. Cas. 519, the Iowa Supreme Court discussed fully the law of foreign torts, and held that the weight of authority is in favor of the proposition that the lex fori controls the mode and extent of the remedy. Northern Pac. R. Co. v. Babcock, 154 U. S. 190, 14 S. Ct. 978, 38 L. Ed. 958; Minor on Conflict of Laws, par. 199; Higgins v. Central N. Eng., etc., R. Co., 155 Mass. 176, 29 N. E. 534, 31 Am. St. Rep. 544; Leonard v. Columbia Steam Nav. Co., 84 N. Y. 48, 38 Am. Rep. 491.

[3] It is urged by the learned counsel for the government that Smith v. Condry, 1 How. 28, 11 L. Ed. 35, supra, is controlling upon the question now before this court; the court in that case saying: "The collision having taken place in the port of Liverpool, the rights of the parties depend upon the provisions of the British statutes, then in force." But our maritime courts have repeatedly held that their jurisdiction, independent of foreign law, extends to maritime torts committed in the ports and harbors and territorial waters of foreign powers, and that they will enforce rights growing out of such torts by virtue of the maritime law as accepted by this country.

In The Eagle, 8 Wall. 15, 19 L. Ed. 365, two American ships having collided in Canadian waters, one was subsequently libeled in rem in the United States. The claimant set up that Canadian law gave no lien for damages in collision, that United States law had no extraterritorial effect to create a lien in foreign territory, and that an admiralty lien must depend on the law of the place. The Supreme Court said:

"It is insisted, however, that, if the court will take jurisdiction for a collision occurring on foreign waters and within foreign territory, the local law of the place of collision will govern, and hence the law of Canada in the present case and Smith et al. v. Condry, in this court, is cited as an authority for the doctrine [1 How. 28, 11 L. Ed. 35]. The collision in that case occurred in the port of Liverpool, while the vessel of the defendant was coming out. The defendant set up in defense that by the statute law of England he was compulsorily obliged to take on board of his ship a Liverpool pilot, which he did, that she was exclusively in his charge when the accident occurred, and that this law, as construed by the courts of England, excused the owner and master of the vessel; and this was agreed to by the court, and applied to the case, the Chief Justice giving the opinion. All vessels entering into, or departing from, a domestic or foreign port, are bound to obey the laws and well-known usages of the port, and are subject to seizure and penalties for disobedience; and, when submitting to them, they are entitled to all the protection which they afford. * * * These are exceptional cases, and furnished no rule to the court below for the trial of the collision in question. It was tried there, as it should have been tried, according to the practice and principles of the courts of admiralty in this country, wholly irrespective of any local law."

In The Avon, Fed. Cas. No. 680, decided in the Circuit Court of the Northern District of Ohio, the court was dealing with a collision in the Welland Canal, in Canadian territory, between an American and a Canadian vessel. The Canadian law gave no lien. The Canadian vessel was libeled in an American port after she had been sold in Canada to an innocent purchaser; and it was contended that the only law applicable was the Canadian law. Judge Emmons held that the rights of the parties were controlled by the American law. He pointed out that there is an important distinction between torts occurring in foreign territorial waters and those occurring on foreign territory. In closing his opinion, he said:

"The general rule in reference to ships, as we understand it, is not to yield the maritime law to any doubtful suggestions of the local power, and in no case to do so where its invasions are unjust and injurious to the general interests of commerce."

This court, sitting in the District Court of Maine, in The Kongsli, 252 F. 267, had before it a case in which the Norwegian ship Kongsli, having collided with a British ship in the harbor of Oran, Algeria, in French territorial waters, a suit in personam was commenced there against the master of the Kongsli. While this suit was pending, a libel in rem upon the same cause of action was brought against the Kongsli in Maine. Upon a motion to dismiss the libel because of the pendency of the action in Algeria, the court, refusing the motion, said:

"While, apparently, the French courts do not possess any procedure designed to enforce a lien in rem arising out of a maritime collision, the courts in our country do recognize such liens; they have the machinery to enforce them, and will enforce them, even where the collision occurred in the territorial waters of a country whose law does not give such maritime lien against the offending vessel. * * * In the case at bar the libelant has a lien given by the general maritime law of the United States. Such lien may be enforced by an 'action in rem. This right is given by the laws of the United States, and the laws of the United States are supreme in our courts over French law. * * * The maritime usages of foreign countries are not obligatory upon the courts of the United States, and will not be respected as authority, except so far as they are consonant with the well-settled opinions of English and American jurisprudence. This is well settled by the Supreme Court. The Elfrida, 172 U. S. 186, 19 S. Ct. 146, 43 L. Ed. 413."

See, also, the Snetind (D. C.) 276 F. 139, where the same court refused to dismiss a libel to enforce a lien for labor and supplies furnished an American ship in an English port, saying:

"It is the prevailing doctrine of our maritime courts that the laws of the United States are supreme in our courts over foreign law. * * * In the case before me the libelants have, in my opinion, shown themselves entitled to a lien under the general maritime law. The proper law by which such a lien in rem is enforced is the lex fori."

The Circuit Court of Appeals in the Fourth Circuit cited The Eagle, The Avon, and The Kongsli, supra, as authorities for its decision in The West Cherow (D. C.) 276 F. 585.

It will be seen by the cases to which I have referred that the current of decision of our American courts has been to enforce a lien under the general maritime law, as applied by American tribunals, where no lien was given by the law of the place where the tort occurred.

In the instant case, I think there is strong reason for the court to hold that the maritime law, as adopted and applied in our American tribunals, should be enforced, when it is found that the difference between the German law and American law, if there be a difference, exists only in the rule for measuring and assessing damages. The question before me arises between an American citizen and an American ship, tried in an American court. I think there is nothing in the case calling for a departure from the prevailing practice of our courts in enforcing American maritime law.

A decree may be presented, granting to the libelant full damages. Unless the parties agree upon the amount of damages, an assessor will be appointed to pass upon the question. The libelant recovers costs.