ITEL CONTAINER INTERNATIONAL
CORPORATION, Plaintiff,

v.

ATLANTTRAFIK EXPRESS SERVICE,
LTD., et al., Defendants.

ASSOCIATED MARINE INSURERS
AGENTS PTY. LIMITED, et
al., Plaintiffs,

v.

ATLANTTRAFIK EXPRESS SERVICE,
LTD., et al., Defendants.

Nos. 86 Civ. 1313 (RLC), 87
Civ. 836 (RLC).

United States District Court,
S.D. New York.

May 10, 1988.

**439**

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City (Anthony J. Pruzinsky, of counsel), for plaintiffs.

Carter, Ledyard & Milburn, New York City (Lawrence F. Carnevale, James Gadsden, of counsel), for defendants.

## OPINION

ROBERT L. CARTER, District Judge:

On or about January, 1986, voyage 106 of the M/V TAVARA commenced at ports in New Zealand and Australia, carrying cargo bound for destinations in Europe, Canada and the United States. This action was brought by shippers, consignees and marine insurers of that cargo, who seek damages arising out of the abandonment of the voyage at the port of Livorno, Italy.[1] Bills of lading for the subject cargo were issued by defendant Atlanttrafik Express Service, Ltd., charterer of the vessel.[2] The liability of the remaining *in personam* defendants ("the Sea Containers Defendants" or simply "defendants") stems from their alleged status as joint venturers with Atlanttrafik in connection with voyage 106,[3] and as guarantors of Atlanttrafik's bill-of-lading obligations to plaintiffs.

More specifically, the complaint alleges that the Sea Containers Defendants, as joint venturers with Atlanttrafik, are bound by Atlanttrafik's bills of lading (¶ 17), and thus share liability for Atlanttrafik's alleged breach of its obligations under those bills of lading (¶ 19) and for its alleged unreasonable deviation from the voyage contracted for. (¶ 25) It is further alleged that the Sea Containers Defendants guaranteed Atlanttrafik's performance of its contractual obligations (¶ 41), while knowing that the TAVARA would in all likelihood be prevented from completing her voyage due to arrest or attachment by creditors. (¶ 48) Finally, some plaintiffs aver that, upon the abandonment of voyage

---

1. Upon the abandonment of the voyage, eight of the plaintiffs arrested the TAVARA under Italian law to obtain security for anticipated losses. The vessel was released upon the posting of security covering the claims of those eight in full.

2. Atlanttrafik has subsequently undergone liquidation.

3. The Sea Containers Defendants are said to have "owned, operated, managed, chartered or otherwise controlled" the TAVARA, as well as the M/V STRIDER CRYSTAL, which transshipped various plaintiffs' cargo to Philadelphia. Complaint, ¶¶ 5–11. The two vessels are also named as defendants.

106 at Livorno, they were required, under circumstances constituting duress (¶ 38), to pay the Sea Containers Defendants an illegal additional freight charge for the transshipment of their cargoes from Livorno to Philadelphia aboard the M/V STRIDER CRYSTAL. (¶ 29) Plaintiffs seek to recover for damage to their cargoes as well as the costs incurred in transshipping them from Livorno to their ultimate bill-of-lading destinations.

The Sea Containers Defendants have moved to dismiss the complaint in *Associated Marine Insurers Agents Pty., Limited, et al. v. Atlanttrafik Express Service, Ltd., et al.*, 86 Civ. 836 (RLC), on grounds of *forum non conveniens* and *lis alibi pendens*. Defendants Nagara Tam Ltd., Strider 2 Ltd., and the two vessels move to dismiss on the further ground that they were not timely served. Also pending is defendants' motion to dismiss the sixth cause of action for failure to plead fraud with particularity, and plaintiffs' cross-motion for leave to amend the complaint to assert a claim for punitive damages. Finally, some of the Sea Containers Defendants move the court to certify for interlocutory appeal the court's denial, by opinion dated August 18, 1987, of their motion for partial summary judgment in one of the consolidated cases. *See Itel Containers International Corp. v. Atlanttrafik Express Service, Ltd.*, 668 F.Supp. 225 (S.D.N.Y.1987) (Carter, J.).

## DISCUSSION

### I. The Court's Exercise of Jurisdiction

Defendants invoke two related doctrines in support of their motion that the court decline to exercise jurisdiction over this controversy. Those doctrines—*forum non conveniens* and *lis alibi pendens*—are linked by the overarching principle that admiralty courts possessed of jurisdiction over a particular case "will exercise it unless special circumstances exist to show that justice would be better subserved by

declining it." *The Belgenland*, 114 U.S. 355, 366–67, 5 S.Ct. 860, 865–66, 29 L.Ed. 152 (1885), *quoted in Poseidon Schiffahrt, G.M.B.H. v. M/S Netuno*, 474 F.2d 203, 204 (5th Cir.1973). *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947) (*forum non conveniens* an instance of the court's "power to decline jurisdiction in exceptional circumstances"); *Belcher Co. of Alabama v. M/V Maratha Mariner*, 724 F.2d 1161, 1165 (5th Cir.1984) ("the applicable rule [of *lis alibi pendens* is that] a court having jurisdiction should exercise it unless a compelling reason not to do so is demonstrated").

### A. Forum Non Conveniens

■ The "central focus of the *forum non conveniens* inquiry is convenience." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249, 102 S.Ct. 252, 262, 70 L.Ed.2d 419 (1981), *reh'g denied*, 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982). Dismissal on grounds of *forum non conveniens* is appropriate "where trial in the plaintiff's chosen forum imposes a heavy burden on the defendant or the court, and where the plaintiff is unable to offer any specific reasons of convenience supporting his choice." *Id.* Nonetheless, "unless the balance [of the convenience interests of the litigants] is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843.

This case is ill-suited to the application of *forum non conveniens.* While it may be that an adequate alternative forum exists in Livorno,[4] defendants' demonstration of the availability of an alternative forum carries them only to the threshold of the doctrine. *See Piper Aircraft Co.*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22. They still bear the considerable burden of showing that trial of this matter abroad is significantly more convenient than trial in plaintiffs' chosen forum. *Gilbert*, 330 U.S. at 508, 67 S.Ct. at 843; *Manu Int'l. S.A. v.*

---

4. Dismissal in favor of that forum would, of necessity, be conditioned upon defendants' submission to the jurisdiction of the Livorno tribunal and their waiver of the applicable statute of limitations. *See Calavo Growers of Calif. v. Belgium*, 632 F.2d 963, 968 (2d Cir.1980), *cert. denied*, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981).

*Avon Products, Inc.,* 641 F.2d 62, 65 (2d Cir.1981); *Calavo Growers of Calif. v. Belgium,* 632 F.2d 963, 969 (2d Cir.1980) (Newman, J., concurring), *cert. denied,* 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981).

It is clear, to begin with, that plaintiffs' choice of forum was not made with intent to " 'vex,' 'harass,' or 'oppress' " defendants. *See Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843. Rather, plaintiffs' decision to bring suit here rested upon a number of entirely valid considerations: the choice-of-forum clause in the bills of lading, Pruzinsky Aff't, Ex. 6, at 2, ¶ 5, which pointed to this court; the pendency here of related litigation arising out of Atlanttrafik's insolvency, which permitted economies advantageous to all parties; the amenability of all defendants to suit here; and the fact that the bulk of plaintiffs' damages relate to cargoes bound for the United States. McQueen Aff't, ¶ 7.

Defendants have shown, at best, that trial of this matter in Italy would not be less convenient than trial here; they have not shown that it would be much more so. Witnesses located in Australia are equally inconvenient to either forum, and, in any event, plaintiffs have offered to pay defendants' counsels' expenses in travelling there to depose Australian plaintiffs. Pruzinsky Aff't, ¶ 22. As to those non-party witnesses who reside in Europe, such as surveyors, warehousemen and others, it is plaintiffs who will rely upon their testimony to establish a *prima facie* case. Plaintiffs intend to present this evidence at trial by way of deposition testimony. Since Local Civil Rule 15(a) entitles defendants to move the court for an order requiring plaintiffs to pay defendants' counsels' expenses in connection with the taking of

such depositions,[5] *Colon v. United States,* No. 82 Civ. 34 (CSH), slip op. (S.D.N.Y. Oct. 2, 1984) (Haight, J.) [available on WESTLAW, 1984 WL 936], defendants can complain of minimal inconvenience in this regard. *See Calavo,* 632 F.2d at 969 (Newman, J., concurring) ("It will often be quicker and less expensive to transfer a witness or document than to transfer a lawsuit"), *quoted with approval in Manu Int'l,* 641 F.2d at 65.

Little else that defendants adduce in support of this motion merits discussion. Defendants' complaint that they have been put to the burden of litigating in two fora rings hollow in view of the facts that (1) no substantial activity has been undertaken in the litigation of any of the Italian actions beyond that necessary to preserve the security, Canepa Aff't, ¶ 6, (2) defendants have rejected the offer of the eight Livorno plaintiffs to dismiss the Italian actions in exchange for the posting of substitute security in this court, Pruzinsky Aff't, ¶ 19, and (3) defendants are parties to the consolidated action pending in this court, and must continue to litigate here whether or not their present motion is granted.

Finally, turning to *Gilbert*'s public-interest factors, it is noteworthy that a substantial portion of the damages plaintiffs seek pertain to shipments destined for the United States, and for New York in particular. While few plaintiffs are American citizens, many of the consignees of cargo shipped from Australia are American concerns, and it is purely due to the circumstances of risk-allocation that those resident consignees are not litigants in this action.[6] Nor will transfer of this action appreciably lighten the court's docket, since common issues pertaining to the liability of the Sea

---

**5.** Local Civil Rule 15(a) provides, in relevant part, that "[w]hen a proposed deposition upon oral examination ... is sought to be taken at a place more than one hundred (100) miles from the courthouse, the court may provide in the order or in any order entered under Rule 30(b), Federal Rules of Civil Procedure, that prior to the examination, the applicant pay the expense of the attendance including a reasonable counsel fee of one attorney for each adversary party at the place where the deposition is to be taken...."

**6.** As plaintiffs put it: "The reason many of the plaintiffs suing under these bills of lading are the Australian shippers, rather than the American consignees, is that the shippers or their underwriters ultimately bore the losses claimed for most of the shipments, although in many cases the cost of on-carriage from Livorno was paid initially by the consignees." Pruzinsky Aff't, ¶ 14.

Containers Defendants for the obligations of Atlanttrafik will still require resolution in the consolidated cases. It is also relevant that American law will govern the merits of this dispute, Pruzinsky Aff't, Ex. 6, ¶ 5 (bill of lading choice-of-law clause), and that no party has demanded a jury trial, if indeed one is available by law. *See* 9 Wright & Miller, Fed.Pract. & Proc. § 2315 (1971).

### B. Lis Alibi Pendens

 A plea of *lis alibi pendens* (literally, "an action pending elsewhere"), like one of *forum non conveniens*, may, in exceptional circumstances, induce a court invested of jurisdiction to decline to exercise it. Nonetheless, "[i]t is the prevailing doctrine of our courts that the pendency of an action in a foreign court is no bar to a suit in the federal court." *The Kongsli*, 252 F. 267, 270 (D.Me.1918); *see The Belgenland*, 114 U.S. at 366–67, 5 S.Ct. at 865–66. The court has discovered only two American cases construing *lis alibi pendens* in the admiralty context. *The Kongsli*, 252 F. 267; *Belcher Co.*, 724 F.2d 1161, *rev'g* 1983 A.M.C. 2089 (S.D.Tex.1983). Both courts rejected the application of the doctrine on the ground that the pending foreign action was essentially *in personam*, while the American action was *in rem*. Quoting the leading English case of the time, the Maine court explained that "the two suits being in their nature different, the pendency of the one cannot be pleaded in suspension of the other." *The Kongsli*, 252 F. at 270 (quoting *Harmer v. Bell*, (P.C.) 7 Moore 267, 19 L.T. 235).[7]

In the case at bar, the court need not reach the question of the legal status of the Livorno proceedings under Italian law, so plain is it that the two suits differ in their natures. Only eight of the plaintiffs in this action are parties to the Livorno proceeding which, in turn, involves only two of the present defendants as well as several defendants not before this court. Thus, assuming for argument's sake that the claims of the eight Livorno plaintiffs are identical as between this and the Italian action, the claims of twenty-nine of the thirty-seven plaintiffs herein are not even before the foreign tribunal. Moreover, those twenty-nine plaintiffs' claims are not bonded in the Italian action, nor have defendants offered to post collateral there to cover those claims. *Cf. The Abidin Daver*, (H.L.) [1984] 1 A.C. 398, [1984] 1 All E.R. 470, 483 (per Lord Brandon) (*lis alibi pendens* dismissal appropriate where respondents had offered adequate security in foreign forum); *see also The Atlantic Star*, (H.L.) [1974] A.C. 436, [1973] 2 All E.R. 175, 195 (per Lord Wilberforce). No compelling reason exists by virtue of which this court should decline to exercise its jurisdiction, particularly in view of the Livorno plaintiffs' offer to discontinue the Italian proceedings and release the collateral posted there. Naturally, should this court ultimately award damages against defendants, it will frame its order in such a way as to prevent a double recovery. *See Belcher Co.*, 724 F.2d at 1165–66 (no compelling reason to decline jurisdiction where court averts possibility of double liability).

Nor would these defendants benefit if the court were to follow the lead of the

---

7. Contemporary English jurisprudence in this area does not recognize principles established in this country, and thus provides only limited guidance. English courts of admiralty, for instance, are not vested with the general discretion to decline the exercise of jurisdiction on the ground that a foreign forum is more convenient. The governing rule, rather, is that the court will stay its hand in deference to an alternative forum only where "(a) the defendant ... satisf[ies] the Court that the there is another forum to whose jurisdiction he is amenable in which justice can be done between the parties at substantially less inconvenience or expense, and (b) the stay [does] not deprive the plaintiff of a legitimate personal or juridical advantage which would be available to him if he invoked the jurisdiction of the English court." *MacShannon v. Rockware Glass Ltd.*, (H.L.) [1978] A.C. 795, 812, [1978] 1 All E.R. 625, 630 (per Lord Diplock) (quoted with approval in *The Abidin Daver*, (H.L.) [1984] 1 A.C. 398, [1984] 1 All E.R. 470, 482 (per Lord Brandon)). It is noteworthy in this respect that, in weighing the relative advantages to each party of proceeding in their courts, the British give strong consideration to "the existence in English law of some more favourable substantive rules than would apply elsewhere," *id.* at 194 (per Lord Wilberforce), a consideration which carries no weight under American law. *Piper Aircraft Co.*, 454 U.S. at 254, 102 S.Ct. at 265.

House of Lords in *The Abidin Daver*,[8] for the first inquiry under the modern English view of *lis alibi pendens* is whether a foreign forum is "clearly more appropriate" for the resolution of the dispute between the parties. [1984] 1 All E.R. at 483 (per Lord Brandon); *see id.* at 476 (per Lord Diplock). Defendants have not overcome that hurdle here, as the foregoing discussion of *forum non conveniens* demonstrates.

## II. Service of Process

Defendants Strider 2 Ltd. and Nagara Tam Ltd., as well as the *in rem* defendant vessels, move to dismiss under Rules 12(b)(5) and 4(j), F.R.Civ.P., for unexcused failure to make service within 120 days of the filing of the complaint.

Both Strider 2 Ltd. and Nagara Tam Ltd. are companies organized under the laws of Bermuda. Bubenzer Aff't, ¶ 3. John B. Higgs, the attorney who accepted service on behalf of defendants SeaCo Services Ltd. and Sea Containers Ltd. at Sea Containers House in London, states that he is not authorized to accept service of process on behalf of Strider 2 Ltd. or Nagara Tam Ltd. Higgs Aff't, ¶¶ 2-3. Nonetheless, plaintiffs note that Lloyd's Register of Shipping, *List of Shipowners 1986–87,* lists Sea Management Services, at Sea Containers House, London, as agent for both Nagara Tam Ltd. and Strider 2 Ltd. Pruzinsky Aff't, ¶ 8 & Ex. 4.

Plaintiffs attempted to serve Strider 2 Ltd. and Nagara Tam Ltd. pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361; T.I.A.S. No. 6638; 28 U.S.C.A. foll. Rule 4 (Supp.1988) (entered into force Feb. 10, 1969) ("the Hague Convention"). Requests for the service of Strider 2 Ltd. and Nagara Tam Ltd. were sent to the Supreme Court of Judicature, the body denominated the "Central Authority" for Hague Convention service in the United Kingdom, on February 9, 1987, three days after the com-

plaint was filed. Pruzinsky Aff't, Ex. 2. Service on both defendants was to be made "c/o Sea Management Services, Sea Containers House, 20 Upper Ground, London SE1 9PO, England." *Id.,* Exs. 1, 3.

The Central Authority's return certificate, pursuant to Article 6 of the Hague Convention, states that service was effected on Strider 2 Ltd. on August 2, 1987, "[b]y posting [i.e., mailing] the documents to the registered office of Striders Ltd [sic]." The address of that "registered office" was in Middlesex, not London. The certificate is dated August 13, 1987, and was received by plaintiffs' counsel on August 17. The return certificate with respect to Nagara Tam Ltd., dated August 7, states that no service was effected because "defendant [was] denied at address given. No trace after a search of the companies [sic] Registry." Pruzinsky Aff't, Ex. 3. Plaintiffs' counsel received this certificate on August 18.

On August 24, 1987, defendants served plaintiffs' counsel with the affidavits of Bubenzer and Higgs, among other documents in support of the instant motion. Upon being advised for the first time of Nagara Tam Ltd.'s true address, plaintiffs' counsel made a second attempt at serving Nagara Tam Ltd. pursuant to the Hague Convention, this time directing its request to Bermuda's Central Authority. Pruzinsky Aff't, ¶ 8 & Ex. 5. Service was made on October 16, 1987. Defendants' Reply Br. at 15, n. 7.

Rule 4(j), F.R.Civ.P., provides that:

If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. This subdivision shall not apply

---

**8.** For the reasons stated in note seven, *supra,* English principles in this area cannot be import-

ed wholesale into our law.

to service in a foreign country pursuant to subdivision (i) of this rule.

Plaintiffs argue that their reliance upon Lloyd's *List of Shipowners,* "the most well-known and commonly used reference work in the maritime industry for identifying vessels and their owners," Pruzinsky Aff't, ¶ 8, constitutes "good cause" for late service, and that, in any case, Rule 4(j) does not apply to this case because service was attempted pursuant to the Hague Convention. Factors relevant to a determination of good cause include whether reasonable efforts at effecting service have been made, and whether the defendant suffered prejudice as a result of the delay. *Gordon v. Hunt,* 116 F.R.D. 313, 319–21 (S.D.N.Y.) (Lasker, J.), *aff'd,* 835 F.2d 452 (2d Cir. 1987). Defendants do not dispute that it was reasonable for plaintiff to have relied upon Lloyd's directory. As to prejudice, counsel for the Sea Containers Defendants have represented both moving parties in this action from the start; neither can therefore complain that it has been deprived of actual notice. In sum, there can be no doubt but that the delay in service was attributable to "good cause." [9]

■ The motion to dismiss the *in rem* complaint against the merchant vessels TAVARA and STRIDER CRYSTAL on Rule 4(j) grounds is ill-taken. Procedure in maritime actions *in rem* is governed by Supplemental Rules for Certain Admiralty and Maritime Claims ("Supp.Admir.Rules"), and by the Federal Rules of Civil Procedure only insofar as the latter are not inconsistent with the former. Rule A, Supp.Admir.Rules. Supplemental Rule E(3)(a) provides that "[p]rocess in rem ... shall be served only within the district." Rule C(2) requires that the complaint in an action *in rem* be verified and aver simply that the *res* "is within the district or will be during the pendency of the action." Process *in rem* will issue despite a present lack of jurisdiction over the *res.* Rule C(3), Supp.Admir.Rules.

The Supplemental Rules were intended in part to "preserve the proceeding in rem as it now exists in admiralty cases." Rule C, Supp.Admir.Rules, advisory committee note. In respect to such proceedings, this court has noted that "a defendant should not be able to obtain dismissal of a complaint for lack of *in rem* jurisdiction just by keeping the *res* out of the jurisdiction of the court for ten months," *Crispin Co. v. S/S Jowood,* 1973 A.M.C. 2623, 2624 (S.D. N.Y.1973) (Tyler, J.); so much the less should a four-month (120–day) absence suffice. If Rule 4(j)'s time limits were applied to the service of *in rem* process, the effectiveness of the proceeding *in rem,* which the Supplemental Rules were concerned to preserve, might thus be impaired.[10] There

---

**9.** Plaintiffs' alternative argument, that Rule 4(j) does not apply here, poses a question of first impression. That question is whether service under the Hague Convention constitutes "service in a foreign country pursuant to [Rule 4(i)]" within the meaning of Rule 4(j). A proposed amendment to Rule 4(i), which would explicitly add service "pursuant to any applicable treaty or convention" to the current enumeration of methods of service abroad, 102 F.R.D. 407, 426 (1984), has not been adopted to date. That amendment, however, was simply "designed to *clarify* the applicability of the 1969 Hague Convention ... to international litigation under the federal rules." 4A Wright & Miller, Fed.Pract. & Proc.: Civil 2d § 1134, at 379 (1987) (emphasis added). It is the law in this Circuit that valid service abroad pursuant to the Convention need not conform to the strictures of Rule 4. *Ackermann v. Levine,* 788 F.2d 830, 840 (2d Cir.1986) ("Federal Rule 4 was superceded by the Hague Convention and thus presumptively should not limit application of the Convention"). *But see Int'l Controls Corp. v.*

*Vesco,* 593 F.2d 166, 179–80 (2d Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979) (dicta) ("there is much to be said in support of the view that, even if the terms of the convention were applicable, the convention was not intended to abrogate the methods of service prescribed by F.R.C.P. Rule 4").

It would appear incongruous if Rule 4(i), which implicitly contemplates service pursuant to treaty, should nonetheless, for purposes of Rule 4(j)'s time limitation, be deemed to exclude such service. The case at bar illustrates that service pursuant to the Hague Convention may be a time-consuming process even in an English-speaking jurisdiction; more than 180 days elapsed between the time of plaintiffs' counsel's request for service in London and counsel's receipt of the return certificate.

**10.** For these reasons, the court declines defendants' invitation to follow *Blue Anchor, Inc. v. M/V Emanuel,* 1986 A.M.C. 112 (E.D.Pa.1983) [available on WESTLAW, 1983 WL 11] (holding, without discussion, that Rule 4(j) applies to ser-

is no indication that Rule 4(j), a late addition to the Federal Rules of Civil Procedure, was intended to supplant the *in rem* procedures for which the Supplemental Rules had already made special (and, in part, exclusive) provision.

 This, however, is not to deny the existence of a remedy where service *in rem* is indefinitely delayed. It is within the court's discretion in cases of substantial delay either to hold the action dormant pending the ship's arrival in the jurisdiction, or to dismiss the action without prejudice. *Vanol USA, Inc. v. M/T Coronado,* 663 F.Supp. 79, 82 (S.D.N.Y.1987) (Sweet, J.); *Crispin, supra,* 1973 A.M.C. at 2624; *Int'l Terminal Operating Co., Inc. v. Skibs A/S Hidlefjord,* 1973 A.M.C. 2568, 2571 (S.D.N.Y.1973) (Knapp, J.). Courts have exercised their discretion to dismiss such cases where no other parties-defendant remained before the court. *E.g., Int'l Terminal Operating Co., Inc., supra; Vanol USA, supra.* Here, on the contrary, the reasonable course is to allow plaintiffs the opportunity to perfect service *in rem* if, at any time while the action *in personam* goes forward, the vessels may be arrested in this district.

### III. Particularity in Pleading Fraud

 Defendants move to dismiss the sixth claim for relief for failure to particularize allegations of fraud under Rule 9(b), F.R.Civ.P. Defendants point to two shortcomings. They contend, first, that the complaint does not specify the content of the alleged misrepresentations, and second, that it does not provide each defendant with notice of the role it is alleged to have played in promulgating those misrepresentations to the various plaintiffs. The heart of the sixth cause of action is that "the Sea Containers Group of defendants, in spite of … representations and guarantees [by which they undertook to perform all voyage obligations of Atlanttrafik and the M/V TAVARA], never intended to complete [those] voyage obligations." Complaint, ¶¶ 41, 49.[11]

Plaintiffs have submitted to the court documents produced to them in discovery which appear to show that agents of Sea Containers Ltd. made a cost-conscious decision to terminate voyage 106 of the TAVARA at Livorno. This decision followed close on the heels of the resolution of the directors of Atlanttrafik's parent-entity permanently to wind up Atlanttrafik's busi-

---

vice of maritime process *in rem* ). In any event, it is clear that plaintiffs here have shown good cause for failing to make service within 120 days; the vessels have not called at the Port of New York during the pendency of this action, and the owners of the *rei,* who are themselves personally before the court, have suffered no prejudice by the delay. By contrast, the *Blue Anchor* plaintiff made no showing of any kind in opposition to the motion to dismiss. *Id.* at 113, n. 2.

11. The allegations of fraud in the complaint are as follows:

"FORTY–FIRST: Prior to voyage 106 of the M/V TAVARA, the defendants identified herein as the Sea Containers Group, individually and/or collectively, made representations and guarantees by which they undertook to perform all voyage obligations of [Atlanttrafik] and the M/V TAVARA.

…

"FORTY–EIGHTH: At the time voyage 106 commenced, the defendants knew, or should have known, that there was a serious risk that the M/V TAVARA would be attached and/or arrested by creditors of [Atlanttrafik] during the course of the voyage, and that the vessel might

not be able to complete the voyage and deliver all cargo consigned to it.

"FORTY–NINTH: Throughout the course of the foregoing events, the Sea Containers Group of defendants, in spite of the aforementioned representations and guarantees, never intended to complete the voyage obligations of [Atlanttrafik] and the M/V TAVARA, and in fact withdrew the TAVARA from service, abandoning voyage 106.

"FIFTIETH: Without knowledge of the foregoing, and in reliance on the representations and guarantees that the voyage would be completed, plaintiffs, or their subrogors, as the case may be, paid their freight, accepted the aforementioned bills of lading, and negotiated same to third parties in good faith and in the belief that the M/V TAVARA's voyage obligations would be performed according to bills of lading terms and applicable law.

"FIFTY–SECOND [sic]: By reason of the premises, the vessels and defendants [Atlanttrafik] and the Sea Containers Group perpetrated a fraud upon the plaintiffs by which they have sustained damages as nearly as same can now be estimated, no part of which has been paid, although duly demanded, in the amount of $865,000.00."

ness due to insolvency. Plaintiffs now specify to the court that they rely upon the bills of lading issued by defendant Atlanttrafik as the source of the alleged misrepresentations. Reply Br. at 3–4. On this motion, the court is called upon to decide not the validity of plaintiffs' allegation that one or more of the Sea Containers Defendants are bound by the terms of those bills of lading, Complaint, ¶ 17, but only whether the nature and source of misrepresentation is properly pleaded.

The drafters of the Federal Rules of Civil Procedure took a revolutionary view of pleading. At common law and under the Codes, the pleadings were burdened with four distinct functions, namely, to give notice of the nature of a claim or defense, to provide a party's version of the facts, to narrow the issues for trial, and to provide a means for the early disposal of sham claims and defenses. 5 Wright & Miller, Fed.Pract. & Proc.: Civil § 1202 (1969). Under the Federal Rules only the notice function remains; the others have been relegated to the devices of pre-trial discovery, summary judgment and the pre-trial conference.[12] A claim, in general, is properly pleaded if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), F.R.Civ.P. Rule 8 applies as much to allegations of fraud as to any other kind of allegations. 5 Wright & Miller, *supra*, § 1298 & n. 66 (1969 & Supp.1987) (citing cases).

The special requirement that "averments of fraud ... be pleaded with particularity," Rule 9(b), F.R.Civ.P., is said to serve three purposes. *E.g.*, *DiVittorio v. Equidyne Extractive Inds., Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). One of those purposes, the provision of notice sufficient to permit responsive pleading, is the function of modern pleading in general. The remaining purposes, which have no apparent bearing on the case at bar, are those of "protecting a defendant from harm to his reputation or good-will[,] ... and ... reducing the number of strike suits."[13] *Id.* To meet these concerns, Rule 9(b) imposes the requirement that fraud allegations "specify the time, place, speaker, and content of the alleged misrepresentations. Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* (citations omitted).

Despite the seemingly clear notice which the complaint provided to defendants,[14] the court has little choice under the governing standard but to grant defendants' motion. Only in response to this motion have plaintiffs specified the source of the alleged misrepresentations, and they have never informed each co-defendant of its individual role in the alleged fraud.[15] The sixth cause of action is accordingly dismissed. Plaintiffs may replead within twenty days of this opinion, and leave is granted to amend the complaint to add a claim for punitive

**12.** The same view of pre-trial procedure prompted the early abolition of the motion for a bill of particulars. Rule 12(e), F.R.Civ.P., as originally enacted, provided for such a motion. The frequent invocation of that rule, which was "the subject of more judicial rulings than any other part of the rules," Rule 12(e), F.R.Civ.P., advisory committee's note (1946 amendment), led to delay and intruded on the proper domain of discovery. Amended Rule 12(e) permits only a motion for a more definite statement, and only in the instance of a pleading "so vague or ambiguous that a party cannot reasonably be expected to frame a responsive pleading." Rule 12(e), F.R.Civ.P.; *see generally* 5 Wright & Miller, Fed.Pract. & Proc.: Civil §§ 1374–1375 (1969).

**13.** Recent scholarship questions whether the particularity requirement achieves either of

these aims. Sovern, Reconsidering Federal Civil Rule 9(b): Do We Need Particularized Pleading Requirements in Fraud Cases?, 104 F.R.D. 143, 165–77 (1985).

**14.** The lack of ambiguity in the context of this action is demonstrated by the fact that, early in the course of discovery, plaintiffs had already turned up a great deal of evidence going to the issue of fraud. *See* Pruzinsky Aff't of Apr. 14, 1987, Ex. A.

**15.** Allegations of fraud may be made on information and belief insofar as the facts upon which they rest are "peculiarly within the opposing party's knowledge." In such event, "the allegations must be accompanied by a statement of the facts upon which the belief is based." *DiVittorio*, 822 F.2d at 1247 (citations omitted).

damages in the amount of $865,000. Plaintiffs' cross-motion for Rule 11 sanctions is denied.

## CONCLUSION

The motions to dismiss on grounds of *forum non conveniens, lis alibi pendens* and untimely service are denied. Plaintiffs' sixth cause of action is dismissed for failure to plead fraud with particularity, and plaintiffs are granted leave to replead within twenty days of this opinion. Leave is also granted to amend the complaint to add a claim for punitive damages. Plaintiffs' cross-motion for sanctions under Rule 11, F.R.Civ.P., is denied. Finally, the motion in the consolidated case of defendants Strider 4 Inc., Strider 1 Ltd., Nagara Tam Ltd. and Contender 1 Ltd. for certification of an interlocutory appeal from the court's August 18, 1987, opinion is denied.

IT IS SO ORDERED.