### CHILEAN NITRATE CORPORATION

v.

**M/V HANS LEONHARDT, in rem, Taffy Shipping Co., Ltd., Blue Anchor Line, Ltd., Consolidated Grain & Barge Company, Blue Anchor Line, Ltd. and Sociedad Quimica Y Minera De Chile, S.A.**

#### Civ. A. No. 91–4466.

United States District Court, E.D. Louisiana.

Dec. 30, 1992.

Ira Matthew Williamson, O'Neil Eichin, et al., New Orleans, LA, for plaintiff.

Christopher Ogilvie Davis, Mary Bethany Jackson, Phelps Dunbar, Charles F. Lozes, Cynthia Anne Wegmann, Terriberry, Carroll & Yancey, David M. Flotte, Georges M. Legrand, Hebert, Mouledoux & Bland, New Orleans, LA, for defendants.

## RULING ON MOTION

LIVAUDAIS, District Judge.

Plaintiff Chilean Nitrate Corporation ("Chilean") has filed a motion to strike defenses number two, three, four, five, six, and seven from the answer filed by defendant Taffy Shipping Co. ("Taffy"), and defenses number one, two, three, and five from the answer filed by defendant Blue Anchor Line, Ltd. ("Blue Anchor"). Taffy opposes parts of the motion and Blue Anchor does not oppose any part of the motion.

### I. Factual Background

In November 1989, a cargo of sodium nitrate owned by plaintiff was loaded aboard the M/V HANS LEONHARDT in Chile. Defendant Taffy Shipping, a Cyprus corporation with its agent for service of process (Leonhardt & Blumberg) in Germany, owns the vessel. Defendant Blue Anchor, a Liberia corporation, was the alleged operator/charterer of the vessel at the time. Part of the cargo was unloaded in Tampa, part was unloaded in New Orleans and shipped to Helena, Arkansas, and part was unloaded in Brownsville, Texas. Upon discharge in Helena and Brownsville, the cargo allegedly contained contaminants including rust flakes and paint chips.

After defendants authorized a time extension for plaintiff to file suit, plaintiff

filed its complaint on December 9, 1991. On March 5, 1992, plaintiff mailed a summons and a translated complaint to the Ministry of Justice in Hamburg, Germany. On April 1, 1992, plaintiff received a letter in German from the Ministry of Justice indicating that the summons, the complaint, and all accompanying documents had to be translated in order to properly effectuate service of process. On April 9, 1992, prior to obtaining a translation of the letter in German, plaintiff mailed a summons (in English) and complaint (in German) directly to defendant Taffy through its agent for service of process. On May 21, 1992, plaintiff mailed a complete set of translated documents to Taffy Shipping. Four months later, plaintiff did not know the status of those documents, and consequently, on September 25, 1992, plaintiff mailed a complete set of translated documents to the Ministry of Justice. On October 22, 1992, the Ministry of Justice certified that plaintiff's documents had been served on defendant Taffy.

## II. Analysis

### A. Motion to Strike

The motion is now properly before the Court under Rule 12(f) of the Federal Rules of Civil Procedure. The rule provides in pertinent part:

> Upon motion by a party before responding to a pleading ... the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

"Although motions to strike a defense are generally disfavored, a Rule 12(f) motion to dismiss a defense is proper when the defense is insufficient as a matter of law." *Kaiser Aluminum, Etc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir.1982). Motions to strike "are within the sound discretion of the trial court." *Federal Sav. and Loan Ins. Corp. v. Burdette*, 718 F.Supp. 649, 662 (E.D.Tenn. 1989). With these principles in mind, the Court now addresses each of the challenged defenses.

### B. Insufficiency of Service of Process

■ Defendant Taffy has devoted the great majority of its brief to this issue, and the Court believes that both sides have fully addressed whether service of process was sufficient. Both the United States and Germany are signatories to The Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("the Hague Convention"). The Hague Convention governs in all civil and commercial cases where a party transmits a judicial or extrajudicial document for service abroad. *See Vorhees v. Fischer & Krecke*, 697 F.2d 574, 575 (4th Cir.1983). When a matter falls within the scope of the Hague Convention, service must be made strictly according to its guidelines. *See Societe Nationale v. U.S. Dist. Court, S.D. Iowa*, 482 U.S. 522, 534 n. 15, 107 S.Ct. 2542, 2550 n. 15, 96 L.Ed.2d 461 (1987). Also, Rule 4(i) of the Federal Rules of Civil Procedure sets forth provisions for service in a foreign country. Where Rule 4(i) conflicts with the Hague Convention, the Convention prevails. *Harris v. Browning–Ferris Industries Chem. Serv.*, 100 F.R.D. 775, 777–78 (M.D.La.1984).

Defendant Taffy argues that plaintiff did not effectuate proper service of process within 120 days of filing the complaint, as required by Rule 4(j) of the Federal Rules of Civil Procedure. Plaintiff contends that because Rule 4(j) "shall not apply to service in a foreign country pursuant to subdivision (i) of this rule," the 120–day requirement is inapplicable. The Court disagrees. The *Harris* case has been construed by one court to mean that "the provisions of subdivision (i) apply only to service in a foreign country not covered by the Hague Convention." *Foster v. Dentaurum, Inc.*, Civ. A. No. 85–4432, 1986 WL 20899, at *1 (D.Kan. Sept. 17, 1986). In the case before this Court, service must be made pursuant to the Hague Convention, not pursuant to Rule 4(i). Therefore, the language in Rule 4(j) that exempts Rule 4(i) cases from the 120–day requirement does not apply.

■ Plaintiff's failure to correctly serve process within the 120–day period, however, is not fatal to its case. Rule 4(j) pro-

vides that even if a plaintiff has not properly served a defendant within the 120–day period, such action can be excused for good cause shown. A plaintiff shows good cause for delay when he or she makes a good faith attempt to effectuate service of process, but the service nevertheless fails to satisfy all of the requirements set forth in the applicable rule.

■ "[E]ach case must be taken on its own particular facts to determine whether a good faith effort to effectuate service has been made." *Brown v. Bellaplast Maschinenbau*, Civ. A. No. 84–1865, 1986 WL 6145, at *3 (E.D.Pa. May 27, 1986). The Court finds that on the facts of this case, plaintiff has made a good faith attempt to serve process. The terms of the Hague Convention "provide that each signatory country may reject certain general provisions and append specific requirements for valid service of process within that country." *Vorhees*, 697 F.2d at 575. Germany requires that all documents served in its country be written in, or translated into, the German language. *Id.* Furthermore, Germany rejects service of process by direct mail and requires instead that service be made through the appropriately designated central authority, the President of the Court of Hamburg. *See Harris*, 100 F.R.D. at 776–77. In the instant case, plaintiff first mailed on March 5, 1992 a summons in English and a complaint translated into German to the President of the Court of Hamburg. On April 9, before plaintiff realized that Germany requires all documents to be translated into German, it again mailed a summons in English and a complaint translated into German, but this time it sent the mail directly to Taffy Shipping. On May 21, after learning of the language requirement, plaintiff then sent a complete set of translated documents directly to Taffy Shipping. When plaintiff received no response, it finally complied with all relevant requirements on September 25, 1992 by mailing a complete set of translated documents to the President of the Court of Hamburg. In sum, plaintiff made four attempts to properly serve defendant Taffy Shipping. Conse-

quently, this Court believes plaintiff acted in good faith.

In its memoranda, defendant Taffy Shipping cites several cases in an attempt to support its conclusion that the Court should dismiss plaintiff's case. Upon a closer examination of those cases, the Court finds defendant's arguments unconvincing. While the *Harris* case implicitly recognizes that the 120–day service requirement applies when the Hague Convention controls service of process, that court allowed the plaintiff nine months to properly serve the defendant. The relevant amended complaint in *Harris* was filed on June 3, 1983. On February 2, 1984, the court issued an order granting the plaintiff 30 days from that date in which to properly serve the West German defendant under the Hague Convention. 100 F.R.D. at 778. In the instant case, plaintiff has already effectuated proper service, and the ten-and-half-months in which it took to do so certainly does not call for dismissing the complaint, particularly in light of the *Harris* facts.

Defendant Taffy also cites *Foster* and *Vorhees* in calling for a dismissal of plaintiff's complaint. *Foster* is distinguishable because at the time the Court ordered plaintiff to show cause why defendant had not yet been properly served, plaintiff's original attempted service had been quashed four months earlier, and plaintiff still had not attempted to effectuate proper service. 1986 WL 20899 at *1. *Vorhees* does not support dismissing the instant case because plaintiff Chilean has already properly served Taffy Shipping. *See id.* at 576.

Finally, on the issue of serving process, the Court notes that dismissal is appropriate only where the plaintiff has made little or no effort to effect proper service. In one of the few cases where a complaint has been dismissed because the plaintiff failed to properly serve process on a foreign defendant, the court noted that plaintiff "[did] not exactly ben[d] over backward to effect service." *Montalbano v. Easco Hand Tools*, 766 F.2d 737, 740 (2d Cir. 1985). This Court believes that, unlike the

*Montalbano* plaintiff, plaintiff Chilean diligently pursued proper service of process. As a matter of law, Taffy Shipping's defense of improper service is insufficient. Consequently, plaintiff's motion is hereby GRANTED with regard to defense number six in Taffy Shipping's Answer, and defense number three in Blue Anchor's Answer, and those defenses are hereby STRICKEN.

### C. Laches and/or Statute of Limitations

■ Plaintiff correctly notes that a one-year statute of limitations applies to actions for cargo damage under the Carriage of Goods by Sea Act ("COGSA"). 46 U.S.C. § 1303(6). Plaintiff has also provided evidence (Exhibit "A" attached to Memorandum in Support of Motion to Strike Defenses) showing that defendants granted time extensions for plaintiff to file suit.

The Court agrees that the one-year limitations period began to run in December of 1989 when the plaintiff discovered the alleged contamination. Therefore, plaintiff would usually have had to file suit by December of 1990. While plaintiff did receive an extension until March 19, 1992 to file suit, the evidence provided to the Court shows only that defendants agreed to the extension in December of 1991, one year after the limitations period expired. While the letters provided by plaintiff in Exhibit "A" include the words "further extension," the Court cannot say conclusively that the defendants initially agreed to an extension within the one-year limitations period. "When by an exchange of letters, *before the running of the statute of limitations,* it is agreed to extend the time for a fixed and reasonable period, the carrier's waiver of the statute is for that period only." *Monarch Industrial Corp. v. American Motorists Ins. Co.,* 276 F.Supp. 972, 979 (S.D.N.Y.1967) (emphasis added). While letters may have been exchanged before the statute ran in this case, the Court has seen no such evidence, and cannot now determine that Taffy Shipping's defense is legally insufficient. Accordingly, plaintiff's motion is hereby DENIED with regard to defense number two in Taffy Shipping's Answer. Plaintiff's motion is hereby GRANTED as unopposed with regard to defense number five in Blue Anchor's Answer.

### D. Personal Jurisdiction

Rule 4(e) of the Federal Rules of Civil Procedure provides that "[w]henever a statute ... of the state in which the district court is held provides (1) for service of a summons ... upon a party not an inhabitant of or found within the state ... service may ... be made under the circumstances and in the manner prescribed in the statute or rule." Plaintiff asserts *in personam* jurisdiction under the Louisiana "long-arm" statute, LSA–R.S. 13:3201 which permits jurisdiction over a nonresident on any basis consistent with the United States Constitution.

> The Louisiana long-arm statute permits exercise of in personam jurisdiction to the full limits of due process under the fourteenth amendment in cases where the suit arises from the nonresident's contact with the forum. The exercise of in personam jurisdiction comports with constitutional due process requirements if (1) the nonresident defendant has some minimum contacts with the state resulting from an affirmative act or acts on its part and (2) it is not unfair or unreasonable to require the defendant to defend the suit in the forum.

*Growden v. Ed Bowlin and Associates, Inc.,* 733 F.2d 1149, 1150 (5th Cir.1984). Since Louisiana law allows for jurisdiction consistent with the Constitution, the Court need only discuss the two-pronged due process analysis.

■ The Court first addresses the minimum contacts requirement. The defendant has the requisite minimum contacts with a state when it "purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). "When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litiga-

tion' is the essential foundation of *in personam* jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

In the instant case, there is no question that the cause of action arises out of Taffy Shipping's contact with the State of Louisiana. New Orleans was a significant intermediate stop for unloading cargo from the M/V HANS LEONHARDT and then transferring it to barges for shipment upriver to Arkansas. While the exact timing of the alleged contamination is unknown, the cargo discharged in Tampa was apparently not contaminated, and the plaintiff has alleged that some of the contaminants matched the color of the M/V HANS LEONHARDT's holds. Taffy Shipping allowed its vessel to be chartered/and or operated for the specific purposes of transporting materials to New Orleans, and unloading those materials. It therefore availed itself of the privilege of conducting activities within the state. Taffy Shipping "had ample notice that a tort might occur within the jurisdictional boundaries of [Louisiana]; and it is this knowledge, rather than the place where injury actually occurred, which should be determinative on the question of [Taffy Shipping's] amenability to process." *Williams v. Brasea, Inc.,* 320 F.Supp. 658, 659 (S.D.Tex.1970), *aff'd in part, rev'd in part, and remanded,* 497 F.2d 67 (5th Cir. 1974). Taffy Shipping should reasonably anticipate being haled into court in any state where its vessels deliver shipments of cargo. *See World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

While the shipment of cargo might have been Taffy Shipping's only contact with Louisiana, this fact is not determinative. "Instead, it is the nature and quality of those contacts as indicating purposeful availment by the nonresident of the privilege of conducting its activities in-state, thereby invoking the benefits and protections of the forum state laws." *Falco Lime, Inc. v. Tide Towing Co.,* 779 F.Supp. 58, 63 (N.D.Miss.1991). More specifically, this Court notes the persuasive reasoning set forth in *Granite & Quartzite Centre*

*Incorporated v. M/S VIRMA,* 374 F.Supp. 1124 (S.D.Ga.1974). In that case, a dealer in granite sued the voyage charterer of a ship carrying a load of granite from Africa to Georgia. The defendant argued that it was not subject to service of process under the Georgia long-arm statute because it did not conduct business within the state. *Id.* at 1125. The court disagreed and found that even a single contact with the state was sufficient to assert *in personam* jurisdiction over the defendant:

> This single contact with Georgia was a substantial one. The affreightment contract required performance at Savannah of a fundamental and indispensable element of the business undertaking. The breach as to delivery of cargo occurred and the cause of action accrued when the vessel discharged at Savannah and failed to deliver all the granite agreed to be transported.

*Id.* at 1127. Similarly, the contracts of carriage in the instant case called for a cargo of sodium nitrate to be unloaded in New Orleans. The cause of action arises in Louisiana because plaintiff has alleged that the sodium nitrate unloaded in New Orleans was contaminated while on board the M/V HANS LEONHARDT. The reasoning in *Granite,* applied to the facts here, convinces this Court that Taffy Shipping had sufficient minimum contact with Louisiana in order to satisfy the first prong of the due process inquiry.

■ The Court now examines the fairness prong.

> This prong includes factors such as the quality, nature and extent of the activity in the forum state; the relative convenience of the parties; the benefits and protection of the laws of the forum state afforded the respective parties; whether the state has any special interest in providing a forum for the suit; the basic equities of the situation.

*Growden,* 733 F.2d at 1150–51 n. 1. The factors as applied to this case weigh in favor of asserting jurisdiction. First, the Court has found above that the nature and extent of the activity in question support exercising jurisdiction. Second, the State

of Louisiana has an interest in providing corporations, who use state waterways, redress against other corporations whose acts or omissions in Louisiana cause injury to property. Finally, a suit in Louisiana appears to be no less convenient to the parties involved than would a suit in Texas or Arkansas. While more potential witnesses might be located in Texas and Arkansas, the ultimate destination of the allegedly contaminated sodium nitrate, this fact alone certainly does not render unfair a suit in neighboring Louisiana where minimum contacts have been established. The Court therefore finds that the fairness prong of due process has also been satisfied, and accordingly, the defense of lack of *in personam* jurisdiction cannot stand as a matter of law. Consequently, plaintiff's motion is hereby GRANTED with regard to defense number three in Taffy Shipping's Answer, and defense number one in Blue Anchor's Answer, and those defenses are hereby STRICKEN.

### E. *In Rem* Jurisdiction

Taffy Shipping does not oppose the motion to strike the defense of lack of *in rem* jurisdiction. Accordingly, the motion is GRANTED, and defense number four in Taffy Shipping's Answer is hereby STRICKEN.

### F. Subject Matter Jurisdiction

Taffy Shipping does not oppose the motion to strike the defense of lack of subject matter jurisdiction. Accordingly, the motion is GRANTED, and defense number five in Taffy Shipping's Answer is hereby STRICKEN.

### G. Improper Venue

Neither Taffy Shipping nor Blue Anchor opposes the motion to strike the defense of improper venue. Accordingly, the motion is GRANTED, and defense number seven in Taffy Shipping's Answer, and defense number two in Blue Anchor's Answer, are hereby STRICKEN.

Accordingly,

IT IS ORDERED that plaintiff's motion to strike defenses is GRANTED IN PART and DENIED IN PART, and that defenses number three, four, five, six, and seven in Taffy Shipping's Answer, and defenses number one, two, three, and five in Blue Anchor's Answer be STRICKEN.