**John FREDERICK, Individually and Frederick Company, a Michigan corporation, Plaintiffs,**

v.

**HYDRO–ALUMINUM S.A., a foreign corporation, and Pohlman, Inc., a Missouri corporation, and Eberhard Schmidt–Offhaus, Jointly and Severally, Defendants.**

No. 93–CV–70638–DT.

United States District Court, E.D. Michigan, S.D.

Feb. 9, 1994.

Joseph C. Bird, Christopher E. LeVasseur, Troy, MI, for plaintiffs.

Carl H. von Ende, Jeffrey Starman, Detroit, MI, for defendants.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On September 14, 1993, one of the Defendants in the above-entitled cause, Eberhard Schmidt–Offhaus, filed a Motion to Dismiss against the Plaintiffs, John Frederick and Frederick Company, contending that the service of process upon him was invalid. On October 15, 1993, Schmidt–Offhaus and another Defendant, Hydro–Aluminum, s.a., filed a Motion to Dismiss, in which they jointly allege that this Court does not have

personal jurisdiction over either of them.[1] For the reasons that have been set forth below, this Court will (1) deny Schmidt–Offhaus' Motion to Dismiss and (2) deny in part and grant in part the Defendants' Motion to Dismiss.

## I

On November 8, 1988, Frederick Company entered into a Sales Representation Agreement (Agreement) with Bohn Aluminum and Brass Division of Wickes Manufacturing Company (Bohn Aluminum–Wickes). In August 1990, Hydro–Aluminum s.a. of Europe (Hydro–Aluminum) purchased the manufacturing facilities of Bohn Aluminum–Wickes in Adrian and Holland, Michigan. These manufacturing facilities were subsequently transferred to Hydro–Aluminum Bohn (HAB), a company that had been established by Hydro–Aluminum. As a result, HAB became the assignee of the Agreement between Frederick Company and Bohn Aluminum–Wickes and assumed all of its legal and fiscal responsibilities.

Thereafter, HAB encountered some production problems in meeting its obligations to one of its customers, TRW, with whom it had contracted to manufacture automotive air bags. In an effort that was ostensibly designed to permit HAB to continue the manufacture of its products for TRW, Frederick Company made arrangements with Pohlman, Inc. (Pohlman) to perform all of the necessary machining operations. As compensation for its services, Frederick Company was to receive a two and one-half percent (2½%) sales commission from Pohlman on the shipment of all of its aluminum products, processes, and assemblies to HAB or TRW.

However, the Plaintiffs did not receive the agreed upon compensation. They claim that it was improperly withheld because (a) Frederick Company was induced to decline its Pohlman commissions by Theodore DiGuiseppe, an agent of Hydro–Aluminum, and (b) HAB developed a scheme in which the assembly and processing of the aluminum products was wrongfully diverted to Pohlman who, in turn, assembled the final product for TRW.

On February 12, 1993, the Plaintiffs filed a lawsuit in this Court against the Defendants, alleging, among other things, a breach of contract and the tortious interference with an existing contract. Four days later, they initiated legal proceedings in the Oakland County Circuit Court of Michigan against HAB, Richard Boehman and Theodore DiGuiseppe. However, this state court action was dismissed because of a clause in the Agreement which required the parties to submit their differences to an arbitrator.

The motions by Hydro–Aluminum and Schmidt–Offhaus are now before the Court for resolution.

## II

In his motion to dismiss, Schmidt–Offhaus claims that the service of process upon him is legally defective because the summons and complaint were not served in a manner as required by the Hague Convention[2]. He maintains that (1) the certification on the Proof of Service fails to demonstrate compliance by the Plaintiffs with the requirements

---

**1.** The remaining Defendant, Pohlman, Inc., is not a party to either of the motions that are now pending before the Court.

**2.** Both parties agree that the Hague Convention governs the method of proper service in this case. The treaty provides, in relevant part, that:

Article 5

The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either—

(a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or

(b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed....

Article 6

The Central Authority of the State addressed or any authority which it may have designated for that purpose, shall complete a certificate in the form of the model annexed to the present Convention.

The certificate shall state that the document has been served and shall include the method, the place and the date of service and the person to whom the document was delivered....

of the Hague Convention, and (2) the appearance of the word, "personally," on the certificate is inconsistent with his insistence that the papers were delivered to a receptionist at his place of business instead of directly to him. As an alternative form of relief, Schmidt–Offhaus seeks a dismissal of the Plaintiffs' claims because the summons and the complaint were not served upon him within the one hundred twenty (120) day time limit, as required by Fed.R.Civ.P. 4(j).

The Plaintiffs challenge Schmidt–Offhaus' argument. It is their position that (1) he was personally served[3], and (2) the time restriction in Fed.R.Civ.P. 4(j) is inapplicable to service upon an individual in a foreign country.

Fed.R.Civ.P. 12(b)(5) permits a party to raise the defense of insufficiency of service of process in a motion to dismiss. When the validity of the service of process is contested, the plaintiff bears the burden of proving that proper service was effected. *Aetna Business Credit, Inc. v. Universal Decor & Interior Design, Inc.,* 635 F.2d 434, 435 (5th Cir.1981); *Jackson v. United States,* 138 F.R.D. 83 (S.D.Tex.1991). The Sixth Circuit Court of Appeals (Sixth Circuit) has held that "if the first service of process is ineffective, a motion to dismiss should not be granted, but the case should be retained for proper service later." *Stern v. Beer,* 200 F.2d 794, 795 (6th Cir.1952); *Maichok v. Bertha–Consumers Co.,* 25 F.2d 257 (6th Cir. 1928); *see also Vorhees v. Fischer & Krecke,* 697 F.2d 574, 575 (4th Cir.1983) (citations omitted) (plaintiff should be given reasonable opportunity to effect valid service on defendant in compliance with Hague Convention); *Jim Fox Enterprises, Inc. v. Air France,* 664 F.2d 63, 65 (5th Cir.1981). Accordingly, "[w]hen the gravamen of defendant's motion is insufficiency of process, the motion must be treated as one to quash service, with leave

to plaintiffs to attempt valid service." *Daley v. ALIA,* 105 F.R.D. 87, 89 (E.D.N.Y.1985).

Schmidt–Offhaus argues that the laws of Germany require personal service upon the individual who has been named in the summons and complaint. However, the Plaintiffs insist that personal service was effectuated upon Schmidt–Offhaus, as demonstrated by the certificate which reads, in part, that "[t]he documents referred to in the request have been delivered to: ... Mr. Eberhard Schmidt–Offhaus (personally)." (Plaintiffs' Response, Exhibit 1 at English translation of Certificate.) In juxtaposition to the Certificate by the judicial official is Schmidt–Offhaus' affidavit in which he denies personal service.

This Court, having received additional documentation with regard to this issue[4], is convinced that the movant was properly served. Under German law, service may be accomplished personally or by service upon an individual at his place of employment. German Rules of Civil Procedure §§ 180, 183. The latter provision "applies only to service to individuals in their role as 'a business person,' i.e. in the capacity as a representative of the business." (Defendants' Reply to Plaintiffs' Supplemental Memorandum, December 22, 1993 at unnumbered page 3; *see also* Defendants' Supplemental Memorandum, January 3, 1994 at Exhibits A, B.)

In the case at bar, the Plaintiffs argue that Schmidt–Offhaus has been sued in his capacity as an employee of Hydro–Aluminum and for those actions that were taken by him during the course of his employment, all of which should be attributed to his employer. (Plaintiffs' Supplemental Memorandum, January 3, 1993 at 2.) A review of the Complaint provides support for this contention. (Complaint at ¶¶ 42–44.)[5] Furthermore,

---

3. In support of this position, the Plaintiffs offer the certification of a German judicial official who attested under oath that service of the summons and complaint was made upon Schmidt–Offhaus in compliance with the Hague Convention.

4. At the conclusion of the oral arguments, the Court directed the Plaintiffs to file supplemental documentation to support their opposition to Schmidt–Offhaus' claim of improper service.

5. The Complaint alleges at the pertinent paragraphs that:

¶ 42. At all times relevant hereto, Eberhard Schmidt–Offhaus was an agent of Hydro–Aluminum s.a. of Europe.

¶ 43. Hydro–Aluminum s.a. of Europe and its agents and employees owed a duty to Frederick Company to refrain from interfering with Frederick Company's contracts with third parties and its relationships with third parties

Schmidt–Offhaus has acknowledged that a receptionist at his office accepted the summons and complaint. Accordingly, service was properly effectuated pursuant to § 183.

Notwithstanding the foregoing, the Court also finds that on balance, more weight should be given to the affidavit of a judicial officer who is presumptively familiar with the requirements of the German Rules of Civil Procedure. Given the officer's representations, the Court declares that service upon Schmidt–Offhaus was proper.

Having determined the issue relating to the sufficiency of service, this Court must now seek to determine whether the time restrictions in Fed.R.Civ.P. 4(j) are applicable to service under the Hague Convention. Rule 4(j) states:

> If a service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why such service was not made within that period, the action shall be dismissed as to that defendant without prejudice upon the court's own initiative with notice to such party or upon motion. *This subdivision shall not apply to service in a foreign country pursuant to subdivision (i) of this rule.* (emphasis added).

■ Fed.R.Civ.P. 4(i) [6] specifies the method by which service may be made in foreign countries. The question arises as to whether the foreign country exception from the time limitation applies when service must be effectuated pursuant to a treaty and not according to subdivision 4(i). There is no uniformity among the courts that have addressed this issue. *See, Lucas v. Natoli,* 936 F.2d 432 (9th Cir.1991) (plain language of Rule 4(j) makes 120–day provision inapplicable to ser-

vice in foreign country), *cert. denied,* —— U.S. ——, 112 S.Ct. 971, 117 L.Ed.2d 136 (1992); *Chilean Nitrate Corp. v. M/V HANS LEONHARDT,* 810 F.Supp. 732, 735 (E.D.La.1992) (language in Rule 4(j) that exempts Rule 4(i) cases from 120–day requirement does not apply if service must be made in accordance with Hague Convention).

In *Lucas,* the Ninth Circuit Court of Appeals held that the plain language of Rule 4(j) makes the 120–day service provision inapplicable to service in a foreign country. 936 F.2d at 432. However, the court neither indicated whether a treaty governed service in the foreign country nor discussed the relationship between a treaty and the Federal Rules of Civil Procedure. Hence, *Lucas* provides no guidance for this Court in the case at bar.

However, the dicta in two other cases, *Itel Container International Corp. v. Atlanttrafik Express Service, Ltd.,* 686 F.Supp. 438, 444 n. 9 (S.D.N.Y.1988) and *Philipp Bros., Inc. v. M/V Merkur Bay,* 110 F.R.D. 443, 445 (D.Del.1986) ("Rule 4(j) specifically excludes service in a foreign country from its 120 day limit"), suggests that a complimentary relationship exists between a treaty and Rule 4(j).

In *Itel Container,* the Court noted that

> Plaintiffs' alternative argument, that Rule 4(j) does not apply here, poses a question of first impression. That question is whether service under the Hague Convention constitutes "service in a foreign country pursuant to [Rule 4(i) ]" within the meaning of Rule 4(j). A proposed amendment to Rule 4(i), which would explicitly add service "pursuant to any applicable treaty or convention" to the current enumeration of methods of service abroad

which were to Frederick Company's prospective economic advantage.

¶ 44. Hydro–Aluminum s.a. of Europe and Eberhard Schmidt–Offhaus breached the aforesaid duties owed to Frederick Company. . . .

**6.** Fed.R.Civ.P. 4(i) reads, in pertinent part, that: When the federal or state law referred to in subdivision (e) of this rule authorizes service upon a party not an inhabitant of or found with the state in which the district court is

held, and service is to be effected upon the party in a foreign country, it is also sufficient if service of the summons and complaint is made: (A) in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or (B) as directed by the foreign authority in response to a letter rogatory, when service in either case is reasonably calculated to give actual notice; or (C) upon an individual, by delivery to the individual personally.

... has not been adopted to date. That amendment, however, was simply "designed to *clarify* the applicability of the 1969 Hague Convention ... to international litigation under the federal rules." ... It is the law in this circuit that valid service abroad pursuant to the Convention need not conform to the strictures of Rule 4. *Ackermann v. Levine,* 788 F.2d 830, 840 (2d Cir.1986).... *But see Int'l Controls Corp. v. Vesco,* 593 F.2d 166, 179–80 (2d Cir.), *cert. denied,* 442 U.S. 941, 99 S.Ct. 2884, 61 L.Ed.2d 311 (1979)....

It would appear incongruous if Rule 4(i), which implicitly contemplates service pursuant to treaty, should nonetheless, for purposes of Rule 4(j)'s time limitation, be deemed to exclude such service. The case at bar illustrates that service pursuant to the Hague Convention may be a time-consuming process even in an English-speaking jurisdiction....

686 F.Supp. at 444 n. 9 (some citations omitted).

Along similar lines, a district court for the Western District of Tennessee stated:

Even though the Hague Convention is a self-executing treaty, and thus is the law of the land, its terms should be viewed as complementary to the provisions of Rule 4. The Hague Convention carefully articulates the procedure which a litigant must follow in order to perfect service abroad, but it does not prescribe the procedure for the forum Court to follow should an element of the procedure fail. Rule 4 stresses actual notice, rather than strict formalism.... There is no indication from the language of the Hague Convention that it was intended to supersede this general and flexible scheme, particularly where no injustice or prejudice is likely to result to the party located abroad, or to the interests of the affected signatory country. The Hague Convention should not be construed so as to foreclose judicial discretion when such discretion needs to be exercised.

*Fox v. Regie Nationale Des Usines Renault,* 103 F.R.D. 453, 454 (W.D.Tenn.1984).

In contrast, the *Chilean Nitrate* court rejected such a relationship between the Hague Convention and Rule 4. The court summarized:

Plaintiff contends that because Rule 4(j) "shall not apply to service in a foreign country pursuant to subdivision (i) of this rule," the 120–day requirement is inapplicable. The Court disagrees. The *Harris* [*v. Browning–Ferris Industries Chemical Services, Inc.,* 100 F.R.D. 775 (M.D.La. 1984)] case has been construed by one court to mean that "the provisions of subdivision (i) apply only to service in a foreign country not covered by the Hague Convention." *Foster v. Dentaurum, Inc.,* Civ.A. No. 85–85–4432, 1986 WL 20899, at *1 (D.Kan., Sept. 17, 1986). In the case before this Court, service must be made pursuant to the Hague Convention, not pursuant to Rule 4(i). Therefore, the language in Rule 4(j) that exempts Rule 4(i) cases from the 120–day requirement does not apply.

810 F.Supp. at 734. The court held that the failure to serve a party within the one hundred twenty day period was not fatal if good cause existed to justify the delay. *Id.* at 734–35.

Similarly, the Committee of Federal Courts of the New York State Bar Association opined:

[S]ince the Hague Convention is not one of the methods of service prescribed in Rule 4(i), it is not excepted from the requirement of Rule 4(j) that the summons and complaint be served within 120 days after the complaint is filed. Failure to meet that deadline will result in dismissal of the complaint—and loss of the right to pursue the action if the statute of limitations has run—unless an extension has been obtained under Rule 6(b) or good cause for the delay can be shown.

"Service of Process Abroad: A Nuts and Bolts Guide," 122 F.R.D. 63, 77 (footnotes omitted). In reaching this conclusion, the Committee relied upon dictum from two unpublished opinions: *Brown v. Bellaplast Maschinenbau,* No. 84–1865, at n. 1, 1986 WL 6145 (E.D.Pa., May 27, 1986) and *Foster v. Dentaurum, Inc.* No. 85–4432, 1986 WL 20899 (D.Kan., Sept. 17, 1986).

Following a thorough examination of those cases that address this issue, this Court finds the rational of the *Itel Container* court to be the most persuasive. It would be incongruous to make an exception to an exception. A review of the language in Rule 4(i) indicates that proper service can be effectuated in a manner that has been prescribed by a foreign country. While the Hague Convention establishes the exclusive method for service in signatory countries, it simultaneously sets forth the manner that has been prescribed by the foreign country. It merely governs the general language of Rule 4(i). Furthermore, the vagaries of service of an individual in a foreign country make an application of the one hundred twenty day limit burdensome and unreasonable.

Notwithstanding the presence of a treaty, the burdensome process of foreign service militates against the strict application of the one hundred twenty day limitation in this case. Here, the Plaintiffs were obligated to (1) contact the Central Authority in Germany, (2) locate an available translator, (3) cause the pleadings in this case to be translated from English into German, (4) solicit the assistance of an international process server, APS International, and (5) procure an order from this Court that would request the assistance of a foreign government in obtaining service of the pleadings on Schmidt–Offhaus. (Plaintiffs' Response at 7–8.) Moreover, even if the time limits were applicable to the circumstances in this case, these restrictions could be excused for good cause. Fed.R.Civ.P. 4(j).

Despite these actions and the Plaintiffs' representations, the Defendants maintain that the expressed efforts do not establish diligence. This Court disagrees. The difficulties that were encountered by the Plaintiffs in obtaining a translator and securing orders from this Court for judicial assistance in the service of process, along with all of the other steps that were outlined on pages 7–8 of their response, demonstrate good cause why service was not made within the one

hundred twenty day period. Hence, their inability to effectuate service upon Schmidt–Offhaus within a period of one hundred twenty days will be excused.

For the reasons that have been set forth above, this Court will deny Schmidt–Offhaus' request to dismiss the Plaintiffs' claims against him on the basis of an alleged procedural deficiency in the service of process.

### III

In their Motion to Dismiss, the two Defendants contend that this Court lacks personal jurisdiction over Hydro–Aluminum because it does not have, and never had, sufficient contacts with the state of Michigan to make the exercise of personal jurisdiction reasonable.[7] They assert that the unilateral activities of the Plaintiffs cannot provide a basis for personal jurisdiction. In addition, they maintain that this Court lacks subject matter jurisdiction and the issues in this case are barred by the doctrines of collateral estoppel and res judicata. With regard to their subject matter jurisdiction argument, the Defendants submit that, if this Court found Hydro–Aluminum to be the parent company of HAB, the contract between HAB and Frederick Company requires this dispute to be resolved through the processes of arbitration. On the collateral estoppel and res judicata issue, the Defendants point to the Plaintiffs' recent lawsuit against HAB that was dismissed by the state court on the basis of the arbitration clause.

For the purpose of this motion, the Plaintiffs have conceded that Hydro–Aluminum is not the parent company of HAB. (Plaintiffs' Response at 5.) Nevertheless, they oppose the Defendants' motion, asserting that Hydro–Aluminum has maintained a continuous, systematic business relationship with the State of Michigan. Hence, it is their position that the Defendants' arguments relating to the lack of subject matter jurisdiction and res judicata/collateral estoppel matters are now moot.[8]

---

**7.** Although the Defendants' motion was filed on behalf of Hydro–Aluminum and Schmidt–Offhaus, none of their arguments specifically challenge the exercise of personal jurisdiction over

Schmidt–Offhaus by this Court. Hence, this issue will not be addressed.

**8.** According to the Plaintiffs, Hydro–Aluminum should not be considered a party to the contract

■ Fed.R.Civ.P. 12(b) permits a party to raise the defenses of lack of personal or subject matter jurisdiction in the form of a motion. Fed.R.Civ.P. 12(b)(1)–(2). When presented with a proper motion which seeks the dismissal of a claim for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), a court may resolve the issue "on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Serras v. First Tennessee Bank Nat. Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989) (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 904 (2nd Cir.1981)). If the court decides to rely upon the written submissions, it must examine the pleadings in a light that is most favorable to the plaintiff. *Id.* (citations omitted). In this situation, the plaintiff need only make a *prima facie* showing of the existence of personal jurisdiction. *Am. Greetings Corp. v. Cohn,* 839 F.2d 1164, 1169 (6th Cir.1988); *Welsh v. Gibbs,* 631 F.2d 436 (6th Cir.1980) *cert. denied* 450 U.S. 981, 101 S.Ct. 1517, 67 L.Ed.2d 816 (1981).[9] Each case must be decided on its own facts. *Am. Greetings Corp.,* 839 F.2d at 1169.

In *Davis v. A. & J. Electronics,* 792 F.2d 74, 75 (7th Cir.1986), the Seventh Circuit Court of Appeals clearly expressed the effect of Fed.R.Civ.P. 4(e) on federal courts:

> Unless authorized by federal statute or another rule of civil procedure, a district court under Fed.R.Civ.P. 4(e) can exercise personal jurisdiction over a party who is not an inhabitant of or found within the state in which the federal court sits only if the party is subject to the jurisdiction of the courts of the state in which the district court sits.

■ Inasmuch as there is no federal statute which grants personal jurisdiction to the Court under the facts of this case, an examination of the Michigan "long-arm" statute, Mich.Comp.Laws Ann. § 600.715 [10], which governs limited personal jurisdiction over corporations, must now be conducted.

This "long-arm" statute should be construed to extend the scope of jurisdiction as far as the due process clause of the Fourteenth Amendment will permit. *LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1298 (6th Cir.1989) (citing *Chrysler Corp. v. Fedders Corp.,* 643 F.2d 1229, 1236 (6th Cir.), *cert. denied,* 454 U.S. 893, 102 S.Ct. 388, 70 L.Ed.2d 207 (1981)), *cert. denied,* 494 U.S. 1056, 110 S.Ct. 1525, 108 L.Ed.2d 764 (1990); *Chandler v. Barclays Bank PLC,* 898 F.2d 1148, 1150–51 (6th Cir.1990); *See also Sifers v. Horen,* 385 Mich. 195, 188 N.W.2d 623 (1971); *Hadad v. Lewis,* 382 F.Supp. 1365, 1370 (E.D.Mich.1974). *Davis H. Elliot Co. v. Caribbean Utilities Co.,* 513 F.2d 1176, 1179 (6th Cir.1975) (inquiry under statute and due process merge into single due process analysis). Due process mandates that jurisdiction be exercised only if the defendant has sufficient "minimum contacts" with the State of

and, as such, the arbitration clause would be unenforceable against it. They also submit that neither Hydro–Aluminum nor Schmidt–Offhaus is a "privy" of HAB for the purpose of the res judicata and collateral estoppel doctrine which require, in essence, the same claim and the same party or its privy. *See Ward v. Detroit Auto Inter–Insurance Exchange,* 115 Mich.App. 30, 320 N.W.2d 280 (1982); *People v. Gates,* 434 Mich. 146, 452 N.W.2d 627 (1990), *cert. denied,* 497 U.S. 1004, 110 S.Ct. 3238, 111 L.Ed.2d 749 (1990).

9. However, if the court requires an evidentiary hearing and permits adequate discovery to prepare for that hearing, the plaintiff must establish such jurisdiction by a preponderance of the evidence. *Serras,* 875 F.2d at 1215.

10. This statute reads in relevant part as follows: The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:

(1) The transaction of any business within the state.

(2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3) The ownership, use, or possession of any real or tangible personal property situated within the state.

(4) Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Michigan, so that summoning the company to Michigan would not offend the "traditional notions of fair play and substantial justice." *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940); *see also International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (citation omitted). The Sixth Circuit Court of Appeals has developed a three-part analysis that should be applied when making this determination:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*LAK, Inc.,* 885 F.2d at 1299 (citing *Southern Machine Co. v. Mohasco Industries,* 401 F.2d 374 (6th Cir.1968)); *see also Chandler,* 898 F.2d at 1151 (citing *Capital Dredge & Dock Corp. v. Midwest Dredging Co.,* 573 F.2d 377, 379 (6th Cir.1978)); *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir.1992). The "purposeful availment" requirement

> ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, or of the "unilateral activity of another party or a third person." Jurisdiction is proper, however, where the contacts proximately result from the actions by the defendant *himself* that create a "substantial connection with the forum State."

*Conti,* 977 F.2d at 982 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985) (emphasis in original)). A single act can support jurisdiction as long as it creates the required relationship with the forum state. *McGee v. International Life Insurance Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

Furthermore, the burden on the defendant in evaluating the reasonableness of the forum must be considered in light of (1) the forum state's interest in adjudicating the dispute, (2) the plaintiff's interest in obtaining convenient and effective relief, (3) the judicial system's interest in obtaining the most efficient resolution of controversies, and (4) the shared interest of the several states in furthering substantive social policies. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564–65, 62 L.Ed.2d 490 (1980). In cases involving a non-resident alien defendant, the Sixth Circuit Court of Appeals conducts the reasonableness inquiry of "giving special weight to the 'unique burdens placed upon one who must defend oneself in a foreign system.'" *Theunissen v. Matthews,* 935 F.2d 1454, 1460 (6th Cir.1991) (quoting *Asahi Metal Industry v. Superior Court,* 480 U.S. 102, 114, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987)). However, "an inference of reasonableness arises where the first two criteria are met and ... 'only the unusual case will not meet this third criteria.'" *Id.* at 1461 (citations omitted).

▪ In any event, the burden of establishing the existence of personal jurisdiction rests with the plaintiff. *Chandler,* 898 F.2d at 1151. Moreover, the existence of the requisite minimum contracts will turn on the specific facts of each case, including the quality and nature of the defendant's activity. *Max Daetwyler Corp. v. R. Meyer,* 762 F.2d 290, 298 (3rd Cir.1985), *cert. denied,* 474 U.S. 980, 106 S.Ct. 383, 88 L.Ed.2d 336 (1985).

**A**

A review of the record in this case indicates that two potential bases exist upon which to establish personal jurisdiction over Hydro–Aluminum, i.e., (1) "the transaction of any business in the state" and (2) the "doing or causing any act to be done, or consequence to occur, in the state resulting in an action for tort." Mich.Comp.Laws Ann. § 600.715(1)–(2).

With respect to the first prong, the Plaintiffs claim that agents of Hydro–Aluminum participated in direct meetings with them in Michigan. In support of their position, they also point to numerous telephone conversations and correspondence between the parties. On the other hand, the Defendants'

have submitted the uncontroverted affidavit of Richard J. Boehman, the president of HAB, who states that Hydro–Aluminum "has never conducted business in the state of Michigan, and has not conducted any business with the Plaintiffs in this matter." (Defendants' Brief, Exhibit E at ¶ 10.) Although Boehman is not an employee of Hydro–Aluminum, his affidavit is persuasive. Thus, it is the conclusion of this Court that the Plaintiffs have failed to establish the "transaction of business" prong for the purposes of Mich. Comp.Laws Ann. § 600.715(1).

However, the Plaintiffs have set forth sufficient facts to support the existence of the other basis for personal jurisdiction (i.e., causing consequences to occur in the state resulting in an action for tort). Specifically, they have alleged that Hydro–Aluminum's inappropriate interference with its contractual relationship with Pohlman caused several consequences, including the loss of commissions, to occur in Michigan. These facts remain unchallenged. Thus, it would appear that Mich.Comp.Laws Ann. §§ 600.715(2) is triggered by the Complaint. Nevertheless, the due process limitations still apply and must be evaluated.

**B**

■ Applying the three part test in *LAK* (purposeful availment of the privilege of acting in the forum state or causing consequence in the forum state, the cause of action must arise from the defendant's activities there, and the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable) to the facts in this case, it is clear that the exercise of personal jurisdiction over Hydro–Aluminum is improper at this time and would "offend traditional notions of fair play."

Here, the Plaintiffs have not offered any factual support to support their contention

that meetings between representatives of Frederick Company and Hydro–Aluminum took place in Michigan. However, Boehman attested that Hydro–Aluminum "has not conducted any business with the Plaintiffs in this matter." (Boehman Aff. at ¶ 11, October 20, 1993.) Even viewing the facts in the light that are most favorable to the Plaintiffs, their bare allegation is insufficient to negate the affidavit and establish the presence of Hydro–Aluminum agents in Michigan during the times that are relevant to this controversy. Accordingly, the Court must now turn to the submitted correspondence and other documents in search of evidence that would demonstrate the existence of sufficient minimal contacts which would make the exercise of jurisdiction reasonable.

The Plaintiffs attached eighteen exhibits [11] to support their position. A majority of the correspondence was written by John Frederick or individuals that were not agents of Hydro–Aluminum. The existence of business cards in Michigan, and in the possession of the Plaintiffs, does not demonstrate a purposeful availment of this State by Hydro–Aluminum. The Plaintiffs have not advanced any explanation as to how they acquired these cards. In the absence of such evidence, the Court must speculate as to the reasons for their possession of the business cards.

Furthermore, although the letters suggest some connection between Hydro–Aluminum and Michigan, none of the correspondence was written by this corporate Defendant or its agents. As such, these letters do not unequivocally demonstrate a presence of the company in the United States. For example, a January 22, 1992 letter from TRW to HAB makes reference to a future meeting with Schmidt–Offhaus. (Plaintiffs' Response at Exhibit 12.) However, the Plaintiffs do not offer any verification that a meeting in Michigan did occur. Similarly, a letter from an employee of TRW, Robert E. Frownfelter, to Schmidt–Offhaus on January 24, 1992 refers

---

11. The exhibits can be summarized as follows:
   (1) *Exhibit 1:*
      a copy of business cards
   (2) *Exhibits 3, 5, 6, 7, 10, 18:*
      letters by John Frederick to other individuals or Defendants

   (3) *Exhibits 8, 9, 11:*
      letters from HAB to other individuals, including one or both of the Defendants
   (4) *Exhibits 12, 13, 14, 15, 16, 17:*
      letters from TRW employees to other individuals, including one or both of the Defendants

to a future meeting in Michigan. *Id.* at Exhibit 14. Again, the Plaintiffs have not provided this Court with any documentation that Frownfelter ever came to Michigan.

Evidence, which confirms the representations in Exhibit 12 and 14, can be extrapolated from the deposition of Frownfelter who testified in a deposition that Schmidt–Offhaus had "travelled across the ocean to come and discuss this problem with me" when the manufacturing problems at HAB arose. (Frownfelter Dep. at 55, October 29, 1993.)[12] Moreover, Frownfelter said that on two or three occasions he had telephone conversations with Schmidt–Offhaus who came to Washington at his request. *Id.* at 105, 111. No one suggests that Schmidt–Offhaus initiated any of these phone calls. Moreover, a visit to Washington does not constitute a purposeful availment of the privileges of Michigan. Even if Schmidt–Offhaus had come to Michigan as the result of these telephone conversations with Frownfelter, it would appear that his trip would have been made at the behest of TRW. This alone does not indicate purposeful availment.

Frownfelter also testified that he believed that some of Hydro–Aluminum's employees spent time at the Adrian facility. These statements suggest that Hydro–Aluminum sent some employees to Michigan. However, the Plaintiffs have not offered any reason for the presence of these employees which would satisfy the purposeful availment standard. Although this Court could engage in speculation as to the purpose of the Hydro–Aluminum employees in Michigan, the record fails to indicate that they did any work in Michigan.

Two of the proffered exhibits bolster the Plaintiffs' position. (*See* Plaintiffs' Response, Exhibits 2, 4.) Both letters were written by an agent of Hydro–Aluminum to individuals in Michigan. In one of the letters, the agent indicated that the company along with HAB and two other companies had decided to "continue present talks with TRW, make necessary organizational [sic] changes and small investments." *Id.* at Exhibit 4.

It is well settled that a single contact with the forum state, which does not involve the physical presence of the defendant, can be a sufficient basis upon which to establish jurisdiction over the defendant. *McGee,* 355 U.S. at 223, 78 S.Ct. at 201; *Microelectronic Systems Corporation v. Bamberger's,* 434 F.Supp. 168, 170 (E.D.Mich.1977). However, one or both of these letters appear to be the type of random or attenuated contact that the Supreme Court rejected for purposes of establishing personal jurisdiction. *See LAK,* 885 F.2d at 1301. In *LAK,* the Sixth Circuit Court of Appeals rejected the plaintiff's claim that the defendant's telephone calls and letters provided a basis for jurisdiction. Recognizing that the defendant initiated some of the calls, and sent a letter into the forum state, the *LAK* court found these facts to be insufficient when it determined that "there is no reason to suppose that either [the defendant] or [his lawyer] intended to lay himself open to liability 'in every state of the union whenever [he made] telephone calls or wrote to a customer who [might subsequently claim] that they constitute[d] misrepresentations.'" 885 F.2d at 1301 (quoting *Weller v. Cromwell Oil Co.,* 504 F.2d 927, 931 (6th Cir.1974)); *see also Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog,* 954 F.2d 1174, 1177 (6th Cir.1992) (telephone conversations and letters are insufficient to fulfill first part of *Southern Machine* test); *Rann v. McInnis,* 789 F.2d 374, 376 (6th Cir.1986) (telephone calls and injury in Michigan did not establish personal jurisdiction). Consequently these letters, standing alone, are insufficient to justify the exercise of personal jurisdiction over Hydro–Aluminum.

The Plaintiffs' next point to the affidavit of William MacDonald, another employee of TRW, who testified that Theodore DiGuiseppe was an agent of Hydro–Aluminum. However, his subsequent deposition testimony[13] demonstrates that MacDonald cannot state with any reasonable degree of accuracy for which company DiGuiseppe worked. In

---

**12.** Hydro–Aluminum concedes that Schmidt–Offhaus was its employee during all of the times that are relevant to this litigation. (Defendants' Brief at 10.)

**13.** Q: And you understood Mr. DiGuiseppe was here and working as an agent of Hydro–Aluminum s.a. of Europe, correct?
A: That's correct.

fact, the record in this case establishes that DiGuiseppe worked at HAB Southfield in Michigan. (Plaintiffs' Response, Exhibits 1, 11.) Moreover, Boehman said that "[a]t no time has Mr. DiGuiseppe been an employee, representative or agent acting on behalf of Hydro–Aluminum, s.a." (Boehman Aff. at ¶ 18, October 20, 1993.) Examining the facts in the light that are most favorable to the Plaintiffs, they have failed to establish a rebuttable presumption that DiGuiseppe was an agent of Hydro–Aluminum.

Based on the foregoing, the Court is left with only two letters from Hydro–Aluminum upon which to find the requisite minimum contacts. Neither of these letters are sufficient to demonstrate that Hydro–Aluminum purposefully availed itself of the privilege of doing business in Michigan. Moreover, this cause of action does not arise from the letters. Thus, the second prong of *LAK, Inc.*, remains unsatisfied. As such, this Court lacks personal jurisdiction over Hydro–Aluminum.

### IV

For the reasons that have been set forth above, this Court determines that (1) service of process was properly effectuated on Schmidt–Offhaus, (2) personal jurisdiction over Hydro–Aluminum does not exist, and (3) the challenges to subject matter jurisdiction and the claims of res judicata/collateral estoppel are now moot in view of the Plaintiffs' concession for purposes of this motion that Hydro–Aluminum is not the parent of HAB. Accordingly, Schmidt–Offhaus' Motion to Dismiss is denied, and the Defendants' Motion to Dismiss for Lack of Jurisdiction is granted in part and denied in part.

IT IS SO ORDERED.

Q: And apparently Hydro–Aluminum s.a. had business with you and has done business with you in the United States through Mr. DiGuiseppe, correct?
A: He was the sales—vice-president of sales and my main sales contact at Hydro–Aluminum on the inside basis.
Q: In your affidavit you say Hydro–Aluminum s.a. of Europe?

A: Same joint, HAB, Hydro–Aluminum Bohn, they switched names in the process. It used to be Bohn Aluminum, then it was Hydro–Aluminum s.a., yeah, that's correct, same guy, same company.
(MacDonald Dep. at 53–54, October 28, 1993.)