CARGILL FERROUS INTERNATIONAL,
A DIVISION OF CARGILL, INC.,
Plaintiff,

v.

M/V ELIKON, et al., Defendants.

No. 92 C 7931.

United States District Court,
N.D. Illinois, E.D.

March 21, 1994.

**194**

Stephen C. Veltman, Pretzel & Stouffer, Chtd., Chicago, IL, for Cargill Ferrous Intern., a division of Cargill, Inc.

Cornelius P. Callahan, Jr., Callahan & Christensen, Mark E. Christensen, Christensen & Ehret, Chicago, IL, for Canadian Forest.

## MEMORANDUM OPINION

GRADY, District Judge.

Before the court is defendant Canadian Forest's motion to dismiss the verified complaint. For the reasons discussed below, the court denies the motion in part and gives the parties notice that the remaining issue will be decided as a matter of summary judgment under Fed.R.Civ.P. 56.

## BACKGROUND

The plaintiff, Cargill, is seeking to recover for alleged damage to a cargo of cold-rolled steel coils shipped from Brazil to Chicago aboard the M/V Elikon. Among the defendants is the movant, Canadian Forest Navigation Co., Ltd. ("Canadian Forest"), which had chartered the Elikon.[1] The boat arrived at Chicago on November 29, 1991. On board were 319 coils, packed in metallic can-like containers wrapped in steel bands. The parties substantially agree that stevedores completed unloading the coils from the ship at approximately 11:30 p.m. on December 2. A marine surveyor employed by Cargill viewed some of the coils in the days leading up to and including December 3, 1991, but he has stated in an affidavit that the goods were such that the damage could not be discovered until the coils were removed from the metal cans upon arrival at a later destination. Cargill now claims that the coils sustained physical damage and rust during the voyage aboard the Elikon.

On December 3, 1992, Cargill filed this lawsuit for recovery under the Carriage of Goods By Sea Act, 46 U.S.C.App. § 1300 *et seq.* ("COGSA"). By April 15, 1993, Cargill still had not served process upon any of the

---

**1.** The briefs indicate that the Elikon's actual owner was defendant Sphinx Navigation Ltd. Sphinx and Canadian Forest had entered into a time charter party agreement, which enabled Canadian Forest to assume an ownership role for purposes of a voyage charter it entered with a Brazilian concern, which is not named as a defendant. In addition to Sphinx and Canadian Forest, Cargill has sued Federal Marine Terminals, which operated the dock at which the cargo was discharged from the Elikon. Cargill has named the Elikon as an *in rem* defendant.

defendants, including Canadian Forest, which is a foreign corporation based in Montreal, Canada. After the court held several status hearings regarding the lack of service, Cargill eventually served Canadian Forest on July 28, 1993, pursuant to the terms of the Hague Convention. Cargill has not disputed that it made no attempt to serve process on Canadian Forest until after the April 28 status hearing.

Canadian Forest has raised two issues in its motion to dismiss. First, Canadian Forest contends that the complaint should be dismissed under Rules 4(m)[2] and 12(b)(5) for Cargill's failure to effect service within 120 days of filing the complaint on December 3, 1992. Second, Canadian Forest moves for dismissal under Rule 12(b)(6), maintaining that Cargill filed suit after the expiration of COGSA's one-year statute of limitations.

*ANALYSIS*

**I. Service of Process**

■ In seeking dismissal for failure to effect service within 120 days, Canadian Forest asks this court to engage in an expansive reading of the former Rule 4(j), which is now the amended Rule 4(m). The former Rule 4(j) required district courts to dismiss the action without prejudice if service was not made within 120 days of the filing of the complaint, but the requirement did not apply to service in a foreign country pursuant to the former Rule 4(i). Canadian Forest insists that when the plaintiff has made no *attempt* to effect service within 120 days, dismissal is commanded by the rule's policy of encouraging the prompt movement of civil actions in the federal courts.

Unfortunately for Canadian Forest, the amended civil procedure rules took effect on December 1, 1993. The time limit for service now is contained in Rule 4(m), which, unlike its predecessor, does not require dismissal

but permits the district court to direct that service be effected within a specified time. Fed.R.Civ.P. 4(m).[3] By an April 22, 1993, order of the United States Supreme Court, the amended rules govern all proceedings after December 1, 1993, and "insofar as just and practicable," all proceedings then pending. *See* 61 U.S.L.W. 4365 (U.S. April 27, 1993); 28 U.S.C. § 2074(a).

This court can see no reason why applying the amended Rule 4(m) to this case would be unjust or impracticable. Canadian Forest has made no argument that it was in any way prejudiced by the delay in obtaining service. Instead, it has pointed to case law illustrating courts' displeasure with plaintiffs who "[have] not exactly bent over backward to effect service." *See Montalbano v. Easco Hand Tools, Inc.,* 766 F.2d 737, 740 (2d Cir.1985).

■ That may be true of the plaintiff in this case, but Canadian Forest has cited no case squarely holding that despite the rules' exception to the 120-day time limit for foreign service, the limit applies when there has been no *attempt* at foreign service. The Ninth Circuit held precisely the opposite in *Lucas v. Natoli,* 936 F.2d 432 (9th Cir.1991), *cert. denied,* ─── U.S. ───, 112 S.Ct. 971, 117 L.Ed.2d 136 (1992). "[T]he plain language of Rule 4(j) makes the 120-day service provision inapplicable to service in a foreign country.... Whether or not the Rules of Civil Procedure should be amended to deal more adequately with the question of service in foreign countries is not for us to decide." *Id.* at 432–33. The amended Rule 4(m) does not materially differ from the former Rule 4(j) in regard to the exception from the 120-day time limit in cases involving service in foreign countries. This court concurs with the *Natoli* court's reasoning and applies it to the amended Rule 4(m) to hold that service in a

---

**2.** The relevant text concerning the time limit for service of process is now found in Rule 4(m), under the amended rules that took effect on December 1, 1993. This rule formerly was Rule 4(j) under the old rules.

**3.** Rule 4(m) reads in its entirety:
   **Time Limit for Service.** If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its

own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

foreign country is not subject to the 120–day time limit. Accordingly, even if the court were to decide this issue under the former Rule 4(j), it would reach the same result.

■ Finally, the court is unpersuaded by Canadian Forest's submission of authority holding that if service in the foreign country is made under the Hague Convention, such service is not pursuant to the federal rules and therefore is not within the foreign service exception to the 120–day time limit. *See Chilean Nitrate Corp. v. M/V Hans Leonhardt,* 810 F.Supp. 732, 735 (E.D.La.1992). The amended rules completely foreclose this argument by specifically referring to the Hague Convention as among the permissible means of service in a foreign country. Fed. R.Civ.P. 4(f)(1).[4] So long as service is in accord with Rule 4(f), it is not subject to the 120–day time limit for service. Fed.R.Civ.P. 4(m). In any event, even under the former set of rules, service under the Hague Convention is complementary to service under the former Rule 4(i) and therefore would not fall outside the exception to the 120–day time limit under the former Rule 4(j), notwithstanding the opinion in *Chilean Nitrate. See Frederick v. Hydro–Aluminum, S.A.,* 153 F.R.D. 120, 125 (E.D.Mich.1994).

Canadian Forest's motion to dismiss the complaint for failure to effect or attempt service within 120 days of the filing of the complaint is denied.

## II. COGSA's Statute of Limitations

■ The question of whether Cargill's claims are time-barred by COGSA's one-year statute of limitations, 46 U.S.C.App. § 1303(6), remains under advisement. The question will turn on the meaning of the term "delivery," which the statute establishes as the point when the limitations period begins to run. Deciding the motion will require the court to consider factual matters outside the pleadings. Because both sides have submit-

ted affidavits and exhibits with their memoranda concerning Canadian Forest's motion to dismiss, the court gives the parties notice of its intent to treat this Rule 12(b)(6) motion as a motion for summary judgment under Rule 56. *See English v. Cowell,* 10 F.3d 434, 437 (7th Cir.1993). In the event the parties wish to submit additional evidentiary exhibits or to contradict any material facts that have been asserted thus far, the court will give the parties a reasonable opportunity to do so.

## CONCLUSION

For the foregoing reasons, Canadian Forest's motion to dismiss the verified complaint under Rules 4 and 12(b)(5) for insufficiency of service of process is denied. The question of whether COGSA's one-year statute of limitations bars Cargill's claims remains under advisement. As to the limitations issue, the court grants the parties until April 4, 1994, to submit any additional evidence. The court also grants each party until April 18, 1994, to respond.

---

**4.** The amended Rule 4(f)(1) reads:

    **Service Upon Individuals in a Foreign Country.** Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States:

    (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents....